Filed 4/18/13

# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE, )
)
      Plaintiff and Appellant, )
) S200158
      v. )
) Ct.App. 6 H036501
WESLEY CIAN CLANCEY, )
) Santa Clara County
      Defendant and Respondent. ) Super. Ct. Nos.
) C1072166 & C1073855
_____)

Over the prosecution's objection, defendant Wesley Cian Clancey pleaded no contest to all charges (an assortment of felony and misdemeanor charges, mostly theft related) and was sentenced to five years in prison. To arrive at the five-year sentence, the trial court exercised its discretion under Penal Code section 1385[1] to dismiss both the on-bail enhancement (§ 12022.1) and the allegation that defendant had suffered a prior strike conviction within the meaning of the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)).

A divided panel of the Court of Appeal held that the five-year sentence was the product of an unlawful judicial plea bargain and vacated defendant's pleas and admissions. Defendant petitioned for review, contending that he entered his plea after the trial court lawfully indicated its sentence and not as part of an unlawful

---

[1] All further statutory references are to the Penal Code.

judicial plea bargain.  We conclude that the record is ambiguous as to whether the sentence proposed by the trial court reflected what it believed was the appropriate punishment for this defendant and these offenses, regardless of whether defendant was convicted by plea or following trial, or instead reflected what it believed was necessary to induce defendant to enter a plea.  We therefore affirm in part the judgment of the Court of Appeal and remand the matter to the trial court to clarify the ambiguity (see *People v. Superior Court* (*Felmann*) (1976) 59 Cal.App.3d 270, 277-278) and, if it reinstates the judgment, to recalculate defendant's presentence conduct credits.

## BACKGROUND

On August 19, 2010, defendant pleaded no contest to all the charges in the first amended complaint in case No. C1072166 (two counts of forgery (§ 470, subd. (d)); two counts of grand theft (§§ 484/487, subd. (a)); one count of false personation (§ 529); and an allegation that he had suffered a prior strike conviction), as well as all the charges in the first amended complaint in case No. C1073855 (three counts of attempted grand theft (§§ 664/487); a felony and a misdemeanor count of using a stolen access card (§§ 484g/487, 484g/488); one count each of second degree burglary (§§ 459/460, subd. (b)), concealing stolen property (§ 496), resisting an officer (§ 148, subd. (a)(1)), and falsely identifying himself to an officer (§ 148.9); and allegations that these crimes were committed while on bail and that he had suffered a prior strike conviction).  In accordance with the sentence indicated at the time defendant entered his plea, the superior court sentenced defendant to five years in prison, calculated as follows:  the midterm of two years for forgery; consecutive eight-month terms for the remaining forgery conviction as well as the convictions for second degree burglary and using a stolen access card; and consecutive four-month terms for each of the

2

three convictions of attempted grand theft. The court exercised its authority under section 1385 to dismiss the on-bail enhancement and the strike allegations.

A divided panel of the Court of Appeal reversed the judgment and vacated defendant's pleas and admissions. The majority's decision rested on two legal principles: (1) that "an 'offer' by the court that is contingent on a defendant pleading guilty or no contest cannot be a proper indicated sentence because it induces a defendant to plead guilty or no contest," and (2) that "an 'offer' by the court that provides the defendant with the option to withdraw the guilty or no contest pleas and any admissions if the court decides to impose a sentence other than the one offered is not a proper indicated sentence." The trial court violated the first principle, according to the majority, because "[t]he court informed defendant through the plea colloquy that it would impose a five-year term and strike the strike *if he admitted all of the charges and allegations*"; hence, "[t]his was an improper inducement for defendant to enter pleas and admissions." The trial court "confirmed the existence of a bargain" (and thereby violated the second principle) by "making a commitment that defendant could withdraw his pleas and admissions if the court did not follow through on its offer."

In dissent, Santa Clara Superior Court Judge Katherine Lucero, sitting by assignment, acknowledged that an indicated sentence bore "some similarities" to a plea bargain, but emphasized that "a true indicated sentence does not include any inducement to a criminal defendant to plead to the sheet *apart from the indicated sentence*." The dissenting opinion also cautioned that the majority's proposal to make the plea "unconditionally binding on the defendant, though not the court," would undermine the indicated-sentence procedure and leave "very few defendants . . . willing to take this risk": "If a criminal defendant cannot reserve the right to withdraw his or her admissions to all charges if the judge's sentence indication is rescinded, pleading to the sheet in response to an indicated sentence

creates a much greater risk that the defendant may receive the maximum possible sentence."

We granted review to clarify certain aspects of the indicated-sentence procedure.

## DISCUSSION

This case asks us to map the line between the power of the executive and the judiciary in the context of plea bargaining and sentencing.

"The process of plea bargaining which has received statutory and judicial authorization as an appropriate method of disposing of criminal prosecutions contemplates an agreement negotiated by the People and the defendant and approved by the court.  [Citations.]  Pursuant to this procedure the defendant agrees to plead guilty in order to obtain a reciprocal benefit, generally consisting of a less severe punishment than that which could result if he were convicted of all offenses charged. . . .  Judicial approval is an essential condition precedent to the effectiveness of the 'bargain' worked out by the defense and the prosecution." (*People v. Orin* (1975) 13 Cal.3d 937, 942-943 (*Orin*).)  Because the charging function is entrusted to the executive, "the court has no authority to substitute itself as the representative of the People in the negotiation process and under the guise of 'plea bargaining' to 'agree' to a disposition of the case over prosecutorial objection."  (*Orin*, *supra*, 13 Cal.3d at p. 943.)

On the other hand, "[w]here the defendant pleads 'guilty to all charges . . . so all that remains is the pronouncement of judgment and sentencing' ([*People v.*] *Smith* [(1978)] 82 Cal.App.3d [909,] 915), 'there is no requirement that the People consent to a guilty plea' (*People v. Vessell* (1995) 36 Cal.App.4th 285, 296).  In that circumstance, the court may indicate 'what sentence [it] will impose if a given set of facts is confirmed, irrespective of whether guilt is adjudicated at trial or

4

admitted by plea.' (*Smith*, at pp. 915-916.)" (*People v. Turner* (2004) 34 Cal.4th 406, 418-419.)

In this case, defendant contends that the five-year sentence proffered by the trial court was an exercise of the court's lawful sentencing discretion and that he entered a plea in response to the indicated five-year sentence. The People, like the Court of Appeal below, argue that the trial court offered to dismiss the strike as an inducement to an unlawful judicial plea bargain. Our resolution of this dispute must begin with a review of the proceedings in the trial court.

## A. Defendant's Change of Plea and Sentencing

Following off-the-record discussions among the parties, defense counsel, at the request of the trial court, placed on the record the details of defendant's plea: "Mr. Clanc[e]y, on two separate dockets, in each case, he will be pleading as charged, and in each matter will be admitting a serious strike prior allegation. It's anticipated at the time of sentencing the Court will grant an oral *Romero*[2] motion, thereafter sentence Mr. Clanc[e]y to five years in state prison."

The People objected to the proposed disposition. The People's objection was based on their view that "a reasonable resolution would be eight or nine years in state prison" if defendant were to plead prior to the preliminary hearing, that the court's proposed disposition required dismissal of the prior strike allegation (which was "contrary to" the Three Strikes law), and that there "would be a substantial difference between the Court's offer and the People's position" because of the more lenient award of postsentence credits under the court's proposal.

---

[2]     *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

5

Despite the objection, the trial court and the prosecutor proceeded to obtain the appropriate waivers from defendant. The prosecutor additionally elicited defendant's understanding that the maximum term for the charged crimes was 16 years and eight months; that the minimum term was 11 years and four months; and that he was not eligible for probation. After stipulating to a factual basis for the plea, defendant pleaded no contest to all charges and admitted the prior strike allegation and the on-bail enhancement.

At the hearing on defendant's *Romero* motion, the People renewed their objection to the "plea bargain" and urged that defendant's prior strike not be dismissed. The prosecutor's "main" objection was "that a plea bargain was made in this case in that the defendant agreed to plead guilty to the current charges in exchange for an assurance or commitment or promise by the court to strike the strike and sentence him to five years in state prison, and that that agreement was contrary to Penal Code section 667(g) and Penal Code section 1170.12(e) . . . . [¶] So what's happening today with the oral *Romero* and the recommended sentence by the probation department, if the court goes forward with this, is a foregone conclusion, because it's something that was promised to the defendant prior to him [*sic*] changing his plea." The prosecutor also referred the court to the additional information he had submitted in opposition to the *Romero* motion and asserted, "I do not believe the court, at the time of our discussions, prior to the change of plea, had all this information."

Before pronouncing sentence, the trial court stated that the People's comments and objections "if they were viewed in a vacuum" could make it appear "that the court engaged in plea bargaining and abused its discretion; but having said that, if you step away from that vacuum and you view this matter in the totality of the circumstances as how the court operates and has been operating for the past three years that I've been doing this assignment, I think for purposes of

6

any reviewing court, I need to outline for the reviewing court how the conferences are structured and how they're held." The court explained that the "assignment" and "function" of the Early Resolution Calendar in general is "to settle cases, as many as it can, by way of settlement discussions with all parties." As an illustration of the basis for its exercise of discretion in this case, the trial court recited that the parties here "had discussions about the case, perhaps not as in detail as outlined by [the People's] points and authorities," but the court had reviewed "all of that and all of the exhibits that were attached thereto" as well as "the nature of the case and the facts." In addition, "all players that were there at the conference . . . had access to the criminal history of the defendant." As a result, the court "had all this at the time that we had the discussions. So it isn't as though the court made an offer in a vacuum, but rather it was an informed offer that the court had, given the nature of the circumstances." "I don't think this is a case where the court didn't take into consideration the defendant's history, the nature of the case, the age of the prior, in making a determination as to whether or not an offer should be made in this case and on that basis the court did make that offer of five years." Rather, "having read the probation report, having read and considered the points and authorities that have been submitted by [the People], the oral arguments of both parties, the information that the court had at the time it made its offer, there is nothing new that the court did not know back . . . when I made the offer, that would require this court to set aside the plea because of new information that I didn't know at the time."

In response to the prosecutor's contention that the sentence was a foregone conclusion, the court explained that even though the court "was suggesting an offer of—with respect to an oral *Romero* and indicated sentence, it was understood . . . that if there's anything new that comes up, that the court has the ability to set it aside and to put the parties back in their original position and not to make it a

7

condition of the plea." "And, just for the record, the court has set aside pleas where I had indicated a sentence and based on the probation report, a factor came into consideration that I was not aware of and the court felt that that additional factor was weighty enough and that it allowed the court to set aside the plea."

Prior to imposing sentence, the court granted the *Romero* motion, and offered these reasons: the prior strike was approximately 10 years old, the current offenses were neither serious nor violent, no weapons were involved and no one was injured, the loss in this matter was not egregiously excessive, and several of the current offenses were "attempts." The court then struck the punishment for the on-bail enhancement and imposed the "agreed upon disposition" of five years.

**B.  The Distinction Between an Unlawful Plea Bargain and a Lawful Indicated Sentence**

The People argue that the trial court "substituted itself for the prosecutor" and crafted "an unlawful judicial plea bargain" that was "functionally identical" to the judicial negotiations we condemned in *Orin*, *supra*, 13 Cal.3d 937. In that case, the defendant, Orin, was charged by information with attempted robbery, burglary, and assault with a deadly weapon, along with a number of enhancements. (*Orin*, *supra*, 13 Cal.3d at p. 940.) Over the People's objection, the trial court proposed and entered a disposition " 'in the nature of a plea bargain' " under which Orin would plead guilty to the charge of felony assault and be sentenced to the unenhanced term for that offense. (*Ibid*.) In exchange, the trial court would dismiss the remaining charges. (*Id*. at pp. 940-941.) "[T]he net effect of the dismissal was to preclude the prosecution and possible conviction of defendant for two offenses simply because he was willing to plead guilty to a third, all three offenses having been properly charged." (*Id*. at p. 948.) We reversed the judgment on the ground the trial court had failed to set forth reasons for the dismissal of those charges as required by section 1385—and, on that

8

particular record, the apparent justification for the dismissal "was not in furtherance of justice and constituted an abuse of discretion." (*Orin*, *supra*, 13 Cal.3d at p. 951.)

Before addressing the validity of the trial court's exercise of its power under section 1385, though, our unanimous opinion declared that "notwithstanding the court's characterization of the disposition of the cause below 'as being in the nature of a plea bargain,' there was in fact no plea bargain." (*Orin*, *supra*, 13 Cal.3d at p. 942.) Because a "court has no authority to substitute itself as the representative of the People in the negotiation process and under the guise of 'plea bargaining' to 'agree' to a disposition of the case over prosecutorial objection" (*id*. at p. 943), the trial court lacked the authority to dismiss, over the People's objection, charges for which probable cause existed to believe the defendant was guilty (*id*. at p. 947). Such a bargain, we explained, "would contravene express statutory provisions requiring the prosecutor's consent to the proposed disposition, would detract from the judge's ability to remain detached and neutral in evaluating the voluntariness of the plea and the fairness of the bargain to society as well as to the defendant, and would present a substantial danger of unintentional coercion of defendants who may be intimidated by the judge's participation in the matter." (*Id*. at p. 943, fn. omitted.)

*Orin* relied on a "substantially similar" case from the Court of Appeal, in which the trial court and the defendants, over the People's objection, agreed to an arrangement in which the defendants would plead guilty to charges of robbery and rape in exchange for a grant of probation and dismissal of three other felony charges. (*Orin*, *supra*, 13 Cal.3d at p. 947, citing *People v. Beasley* (1970) 5 Cal.App.3d 617.) "Holding said disposition to be improper, the Court of Appeal reasoned that the trial court's action evidenced a disregard of the adversary nature of criminal proceedings and of the state's interest, ' " 'as a litigant . . . in seeing

9

that cases in which it believes a conviction is warranted are tried . . . .' " ' (*People v. Beasley*, *supra*, 5 Cal.App.3d at p. 636, italics omitted, quoting *Singer v. United States* (1965) 380 U.S. 24, 36.)" (*Orin*, *supra*, 13 Cal.3d at pp. 947-948; see also *People v. Allan* (1996) 49 Cal.App.4th 1507, 1517 [trial court made an unlawful plea bargain where the defendant pleaded guilty to one count in exchange for dismissal of the remaining count and five sentencing allegations].)

The distinction between an unlawful plea bargain and an indicated sentence is not merely a matter of form, however. A reviewing court must also focus on the respective roles of the executive branch and the judiciary. The charging function is the sole province of the executive. The executive also decides whether to engage in negotiations with the defense by which a more lenient disposition of the charges can be secured without trial—a bargain that must ultimately be approved by a court. (*Orin*, *supra*, 13 Cal.3d at pp. 942-943.) A court thus "has no authority to substitute itself as the representative of the People in the negotiation process," even for the purpose of clearing congested calendars. (*Id.* at p. 943.)

The imposition of sentence within the legislatively determined limits, on the other hand, is exclusively a judicial function. (*People v. Navarro* (1972) 7 Cal.3d 248, 258.) The "refusal of prosecutors to consider plea bargaining as a viable alternative to a lengthy trial may militate against the efficient administration of justice, impose unnecessary costs upon taxpayers, and subject defendants to the harassment and trauma of avoidable trials. [Citation.] A court may alleviate this burden upon our criminal justice system if this can be accomplished by means of a permissible exercise of judicial sentencing discretion in an appropriate case." (*Orin*, *supra*, 13 Cal.3d at p. 949.)

The prospect of prosecutorial intransigence and judicial overreaching circumscribe a trial court's discretion to indicate its sentence in several important ways.

First, in order to preserve the executive's prerogative to conduct plea negotiations, a trial court generally should refrain from announcing an indicated sentence while the parties are still negotiating a potential plea bargain. The " 'horse trading' " between the prosecutor and defense counsel is the process by which the vast majority of criminal cases are disposed. (*Missouri v. Frye* (2012) 566 U.S. ___, ___ [132 S.Ct. 1399, 1407].) Absent unusual circumstances (see, e.g., *Orin*, *supra*, 13 Cal.3d at p. 949), there is little need for a court to articulate its view of the case until the parties are satisfied that further negotiations are unlikely to be productive. Even then, a trial court may prudently refrain unless the court is convinced the punishment proposed by the People is not an appropriate sanction for the particular defendant and the specific offense or offenses.

Second, a trial court should consider whether the existing record concerning the defendant and the defendant's offense or offenses is adequate to make a reasoned and informed judgment as to the appropriate penalty. The utility of an indicated sentence necessarily depends on the quality of the information available to the court at an early stage concerning the offense and the defendant's criminal history.

Third, "a court may not offer any inducement in return for a plea of guilty or nolo contendere. It may not treat a defendant more leniently because he foregoes his right to trial or more harshly because he exercises that right." (*People v. Superior Court* (*Felmann*), *supra*, 59 Cal.App.3d at p. 276; see also *In re Lewallen* (1979) 23 Cal.3d 274, 281.) Because an indicated sentence is merely an instance of "sentencing discretion wisely and properly exercised" (*Orin*, *supra*, 13 Cal.3d at p. 949), the indicated sentence must be the same punishment the court would be prepared to impose if the defendant were convicted at trial. An indicated sentence, properly understood, is not an attempt to induce a plea by offering the defendant a more lenient sentence than what could be obtained through plea

11

negotiations with the prosecuting authority. When a trial court properly indicates a sentence, it has made no *promise* that the sentence will be imposed. Rather, the court has merely disclosed to the parties at an early stage—and to the extent possible—what the court views, on the record then available, as the appropriate sentence so that each party may make an informed decision.

For example, a defendant who faces a sentence within a wide range (say, between 10 and 20 years) may well demand a trial if the defendant fears being sentenced to the maximum term, even though the prospect of an acquittal is quite low. Once informed that the trial court believes on the current record that the appropriate sentence is 10 years, however, a defendant might choose to plead guilty so as to avoid the ordeal of trial. Such an outcome promotes fairness, in that the defendant receives the same sentence as would have been imposed after trial, and efficiency, in that the same outcome is achieved without trial.

Fourth, a trial court may not *bargain* with a defendant over the sentence to be imposed. (*People v. Labora* (2010) 190 Cal.App.4th 907, 915-916.) In *Labora*, for example, the defendant " 'asked for an indicated sentence in this case from the Court. And the Court indicated six years and eight months. [¶] After the lunch hour, the defense indicated that the defendant was considering that, but would the court be inclined to give him six years instead of the six years and eight months previously indicated.' " (*Id*. at p. 911.) The court " 'felt it was being a little nickel[ed] and dimed by the defense, but agreed to it anyway.' " (*Ibid*.) "Thus, the trial court's indicated sentence was not the sentence to which [the] defendant pled guilty," even though "nothing in the record . . . shows that the trial court changed its indicated sentence based upon further explanation of the facts underlying defendant's case." (*Id*. at pp. 915-916.) On that record, the Court of Appeal determined that "the trial court did not simply inform defendant of the

12

sentence he would receive" but was "negotiating" the disposition with the defendant. (*Id*. at p. 916.)

Despite these limitations, the line between an improper inducement and a lawful indicated sentence, as the dissenting justice below cautioned, has not always been "bright" and in certain circumstances "may allow diverse interpretations." Over 20 years ago, one Court of Appeal recommended that "[t]o aid in appellate review in the future, the trial court should expressly say it is giving an 'indicated sentence.' " (*People v. Superior Court* (*Ramos*) (1991) 235 Cal.App.3d 1261, 1266, fn. 2.) We agree that it would be helpful for the trial court to state expressly that it is providing an indicated sentence. In light of subsequent experience, however, we are not convinced a mere label is necessarily sufficient to ensure that the trial court has not overreached into the executive's role in negotiating dispositions. Accordingly, a trial court that intends to offer an indicated sentence should not only identify it as such, but should also ensure that the record makes clear the indicated sentence represents the court's best judgment as to the appropriate punishment for this defendant and this offense, regardless of whether guilt is established by plea or at trial. A clear statement that the indicated sentence is no more than the trial court's considered judgment as to the appropriate punishment in the case, regardless of whether defendant is convicted by plea or at trial, will not only clarify the trial court's role in the process but will also aid in appellate review.

To be sure, an indicated sentence is not a promise that a particular sentence *will* ultimately be imposed at sentencing. Nor does it divest a trial court of its ability to exercise its discretion at the sentencing hearing, whether based on the evidence and argument presented by the parties or on a more careful and refined judgment as to the appropriate sentence. As stated above, the utility of the indicated-sentence procedure in promoting fairness and efficiency depends to a

13

great extent on whether the record then before the court contains the information about the defendant and the defendant's offenses that is relevant to sentencing. The development of new information at sentencing may persuade the trial court that the sentence previously indicated is no longer appropriate for this defendant or these offenses. Or, after considering the available information more carefully, the trial court may likewise conclude that the indicated sentence is not appropriate. Thus, even when the trial court has indicated its sentence, the court retains its full discretion at the sentencing hearing to select a fair and just punishment. An indicated sentence does not shift the burden to the People at sentencing to argue against its imposition.

## C. Whether the Trial Court Lawfully Indicated a Sentence in This Case

Here, unlike in *Orin* and in *Beasley*, the trial court did not preclude the prosecution or conviction of any part of the charges against defendant. Defendant was convicted of all offenses and admitted all allegations. (*People v. Feyrer* (2010) 48 Cal.4th 426, 434, fn. 6 ["A trial court may provide the defendant with an 'indicated sentence' if he or she pleads guilty or no contest to all charges and admits all allegations"].) However, there is no clear statement in the record that the sentence indicated by the trial court represented the court's best judgment of the appropriate punishment in this case, regardless of whether defendant was convicted by plea or at trial. Instead, the record is fatally ambiguous.

Although the court never stated that defendant faced a more severe punishment if he went to trial or that the proposed disposition might expire if defendant did not promptly accept it, the court *did* make statements that would support such an inference. At the outset, the trial court noted the "practice" that matters assigned to the Early Resolution Calendar "are usually with the understanding of both sides settled for somewhat less than the going disposition at

14

a trial department." When challenged by the People, the trial court did concede that the proceedings here, if "viewed in a vacuum," would make it appear "the court engaged in plea bargaining and abused its discretion," but the court deemed it important that this case be viewed "in the totality of the circumstances as how the court operates and has been operating for the past three years that I've been doing this assignment" in the Early Resolution Calendar. Yet the context the court provided was to reiterate that the calendar's "function" and "assignment" is "to settle cases, as many as it can, by way of settlement discussions with all parties."

On the other hand, the record also shows that the court considered itself fully informed as to the relevant facts about defendant and his crimes at the time the court indicated its sentence; that the court was aware it retained discretion to reconsider the appropriate punishment at the sentencing hearing; and that, after considering all of the evidence and argument, the court continued to believe the indicated sentence was appropriate in this case.

What is missing is a clear statement, whether made by the court or otherwise discernible from the record, that the court's indicated sentence reflected its best judgment as to the appropriate sentence based on defendant's criminal history and his current offenses *and regardless of whether defendant was convicted by plea or at trial.*

Ordinarily, we review a claim that a trial court entered into an improper plea bargain for abuse of discretion. "Accordingly, we ask whether the trial court's findings of fact are supported by substantial evidence, whether its rulings of law are correct, and whether its application of the law to the facts was neither arbitrary nor capricious." (*People v. Superior Court* (*Humberto S.*) (2008) 43 Cal.4th 737, 746.) In examining whether the trial court improperly induced a defendant's plea to what would otherwise be a lawful sentence, the key factual inquiries are whether the indicated sentence was more lenient than the sentence the

15

court would have imposed following a trial and whether the court induced the defendant's plea by bargaining over the punishment to be imposed. (See *People v. Superior Court* (*Felmann*), *supra*, 59 Cal.App.3d at p. 277.) But the record here, as demonstrated above, is entirely ambiguous as to whether the court extended leniency to defendant because of his plea.

Where, as here, the record does not clearly indicate whether the purported indicated sentence represents the trial court's considered judgment as to the appropriate punishment for this defendant and the defendant's offense or offenses, regardless of whether guilt is secured by plea or at trial—and where, as here, the party challenging the disposition has objected on that basis below—the proper remedy is a conditional reversal with directions to the trial court on remand to resolve the ambiguity. (*People v. Superior Court* (*Felmann*), *supra*, 59 Cal.App.3d at pp. 277-278.) If the trial court on remand to rehear and reconsider the plea makes clear that its previously indicated sentence represented its best judgment as to the appropriate punishment for this defendant and the defendant's offense or offenses, without extending any leniency to secure a plea, then it shall reinstate the judgment.

As in *People v. Superior Court* (*Felmann*), *supra*, 59 Cal.App.3d at page 277, footnote 4, we do not mean to imply that "magic words" are required. It is sufficient if the record clearly reflects that the sentence indicated by the trial court represents its best judgment as to the appropriate sentence for the defendant and the defendant's offense or offenses, based on the information then available and regardless of whether guilt is established by plea or at trial. A clear statement to that effect should help maintain the boundary between the prosecution's authority to file charges and negotiate dispositions and the judiciary's authority to exercise discretion in sentencing.

16

Because the trial court may reinstate its judgment on remand, we now turn to the People's remaining legal objections to the trial court's disposition.

**D.  An Indicated Sentence May Contemplate the Trial Court's Exercise of Its Sentencing Discretion, Including Exercise of Its Discretion Under Section 1385**

The People contend that even if the trial court had merely indicated what sentence it believed was appropriate in this case, regardless of whether defendant was convicted by plea or at trial, the trial court lacked the authority to offer an indicated sentence of five years.  A five-year sentence presupposed the exercise of the trial court's power to dismiss the on-bail enhancement and the strike allegations under section 1385—and, in the People's view, section 1385 may not be used as part of the indicated sentence procedure.  They rely on *People v. Woosley* (2010) 184 Cal.App.4th 1136 (*Woosley*), where the Court of Appeal invalidated a similar attempt by the trial court to indicate a sentence that presupposed the exercise of the section 1385 power to dismiss.

In *Woosley*, the defendant was charged with first degree burglary, second degree burglary, petty theft, and an on-bail enhancement.  (*Woosley*, *supra*, 184 Cal.App.4th at p. 1140.)  The "trial court gave what appeared to be an indicated sentence" of two years and eight months, a sentence that "could be imposed only if the trial court dismissed the on-bail enhancement."  (*Id*. at p. 1147.)  The *Woosley* court held that because the sentence "included, anticipatorily, the dismissal of the on-bail enhancement," "it was more than just an indicated sentence."  (*Ibid*.)  Although the defendant pleaded guilty to all charges and admitted the enhancement, "the plea did not expose him to punishment for the on-bail enhancement because the trial court had promised to dismiss it."  (*Ibid*.)  Thus, "the substance of the bargain was no different from the trial court dismissing the on-bail enhancement before taking the plea"—which, absent the prosecutor's

17

consent, "encroaches on the prosecutor's charging authority and exposes the process to the evils discussed . . . in *Orin*." (*Ibid.*)

The encroachment on the prosecutor's charging authority in *Orin*, however, must be distinguished from "the area of proper sentencing discretion." (*Orin*, *supra*, 13 Cal.3d at p. 949.) Within the limits set forth by the Legislature, a trial court has broad discretion to decide whether to grant probation (Cal. Rules of Court, rule 4.414); whether to select the upper, middle, or lower term of imprisonment (§ 1170, subd. (b); Cal. Rules of Court, rule 4.420(b)); whether to run the prison terms on multiple offenses concurrently or consecutively (§ 669; Cal. Rules of Court, rule 4.425); whether to stay punishment of one or more offenses (§ 654); whether to reduce a felony wobbler offense to a misdemeanor (§ 17, subd. (b)); and whether to dismiss one or more offenses or allegations in the interests of justice (§ 1385). Neither *Woosley* nor the People challenge a trial court's authority to exercise its discretion as to each of these choices following a trial or an "open plea" (*People v. Cuevas* (2008) 44 Cal.4th 374, 381, fn. 4), and rightly so. "The imposition of sentence and the exercise of sentencing discretion are fundamentally and inherently judicial functions." (*People v. Navarro*, *supra*, 7 Cal.3d at p. 258.)

It is only when the trial court wishes to exercise its discretion to dismiss an offense or allegation as part of an indicated sentence—i.e., to inform the parties as to the very sentence the court would impose following a trial (see, e.g., *People v. Meloney* (2003) 30 Cal.4th 1145, 1155)—that *Woosley* and the People purport to find an encroachment on the prosecutor's authority. We perceive no statutory or constitutional basis for their objection that a trial court's ordinary sentencing discretion necessarily excludes the power to dismiss under section 1385 in the context of an indicated sentence. (See *People v. Superior Court* (*Howard*) (1968) 69 Cal.2d 491, 502 ["the discretion of the judge [under section 1385] is absolute

18

except where the Legislature has specifically curtailed it"].) *Orin* itself recognized that the "power to dismiss priors" is "an integral part of the trial judge's sentencing discretion, and hence cannot be limited by a requirement of prosecutorial consent." (*Orin*, *supra*, 13 Cal.3d at p. 946, fn. 11.)

In short, "[t]he judicial power is compromised when a judge, who believes that a charge should be dismissed in the interests of justice, wishes to exercise the power to dismiss but finds that before he may do so he must bargain with the prosecutor. The judicial power must be independent, and a judge should never be required to pay for its exercise." (*People v. Tenorio* (1970) 3 Cal.3d 89, 94.) The People cite nothing other than *Woosley* to suggest that a trial court may not rely on section 1385 as part of its ordinary sentencing discretion to indicate what it considers to be the appropriate sentence.

To be sure, the Legislature has limited the power to dismiss in other important ways. A trial court's power to dismiss under section 1385 may be exercised *only* " 'in furtherance of justice,' " which mandates consideration of " 'the constitutional rights of the defendant, and *the interests of society represented by the People*.' " (*Orin*, *supra*, 13 Cal.3d at p. 945.) At the sentencing hearing, the parties will have an opportunity to present evidence and argument concerning the full scope of the matters within the court's sentencing discretion, including the potential exercise of the power to dismiss under section 1385. Section 1385 further " 'require[s] the court to spread upon the minutes for public reference the reason for its action' " (*People v. Bonnetta* (2009) 46 Cal.4th 143, 149), and we have previously explained that "[a]t the very least, the reason for dismissal must be 'that which would motivate a reasonable judge' " (*Orin*, *supra*, 13 Cal.3d at p. 945). Moreover, a court's exercise of this power is subject to review for abuse of discretion. (*People v. Superior Court* (*Romero*), *supra*, 13 Cal.4th at p. 530.) An abuse occurs when the charge or allegation is dismissed

19

"solely 'to accommodate judicial convenience or because of court congestion' " or "simply because a defendant pleads guilty." (*Id*. at p. 531.)

The *Woosley* court expressed concern that unless an indicated sentence predicated on dismissal of a charge or allegation were deemed an unlawful plea bargain, "the trial court could agree to dismiss any or all of charges or enhancements, pursuant to section 1385, in exchange for a defendant's guilty plea on all the charges and enhancements." (*Woosley*, *supra*, 184 Cal.App.4th at p. 1147.)  By requiring that the record clearly reflect the court's understanding that the indicated sentence would apply regardless of whether guilt was established by plea or at trial, we presume that courts will not abuse their extraordinary power under section 1385 as leniency to secure a defendant's plea.  The indicated-sentence procedure is not to be used as a means of indiscriminately disposing of cases at an early stage, even in the face of a crowded court calendar.

Moreover, the potential mischief arising from dismissal of any or all charges or enhancements under section 1385 is no less real after a jury adjudication of guilt or an open plea than it is by the trial court's announcement of its intent to impose such a sentence as part of the indicated-sentence procedure. (See *People v. Superior Court* (*Romero*), *supra*, 13 Cal.4th at p. 531.)  The remedy is not to carve out new exceptions to section 1385, as *Woosley* did, but to enforce the limitations set forth in section 1385 itself through appellate review.  (See *People v. Superior Court* (*Romero*), *supra*, 13 Cal.4th at pp. 530-531.)[3]

It is essential that trial courts, even at the earliest stages of a case, take seriously their duty to fashion a sentence in accordance with the general objectives of sentencing (Cal. Rules of Court, rule 4.410) and to take due account of the

---

[3]    *People v. Woosley*, *supra*, 184 Cal.App.4th 1136 is disapproved to the extent it is inconsistent with the views expressed here.

20

crime and the defendant's criminal history (*id*., rules 4.414, 4.421, 4.423).  As the People point out, an indicated sentence, properly understood, "represents the trial court's application of the law (its ordinary sentencing discretion) to assumed facts."  When a court has reason to believe the assumed facts are suspect or incomplete in a material way, or when substantial doubt exists as to the fairness of the disposition to the People or to the defendant, an indicated sentence will not promote the goals of fairness and efficiency.

A prosecutor "has the 'inherent right to challenge the factual predicate and to argue that the court's indicated sentence is wrong,' " regardless of whether the sentence to be imposed contemplates the exercise of the court's discretion under section 1385.  (*People v. Superior Court* (*Ramos*), *supra*, 235 Cal.App.3d at p. 1271.)  In this proceeding, however, the People do not argue that the trial court abused its discretion under section 1385; they contend only that the trial court acted in excess of its jurisdiction by relying on section 1385 in indicating its sentence.  For the reasons stated above, that contention is rejected.

**E.  An Indicated Sentence May Contemplate the Trial Court's Exercise of Its Discretion to Dismiss a Prior Qualifying Conviction Under the Three Strikes Law**

The Three Strikes law provides that "[p]rior serious and/or violent felony convictions shall not be used in plea bargaining as defined in subdivision (b) of Section 1192.7.  The prosecution shall plead and prove all known prior serious and/or violent felony convictions and shall not enter into any agreement to strike or seek the dismissal of any prior serious and/or violent felony conviction allegation," except to the extent "there is insufficient evidence to prove the prior serious and/or violent felony conviction" or dismissal of the prior conviction would be "in the furtherance of justice pursuant to section 1385."  (§§ 667, subds. (f)(2), (g), 1170.12, subds. (d)(2), (e).)  Relying on these provisions, the People

21

contend that "[t]he Three Strikes law prohibited the trial court from offering to strike the prior serious felony conviction as inducement for the pleas."

We have previously held that the Three Strikes law did not restrict the power of a trial court acting on its own motion to dismiss a prior felony conviction allegation in the furtherance of justice. (*People v. Superior Court* (*Romero*), *supra*, 13 Cal.4th at pp. 529-530.) Indeed, we recently acknowledged that "the sentence that is actually imposed under the Three Strikes law is frequently dependent upon the trial court's exercise of discretion in determining whether, in furtherance of justice, to strike any of the serious or violent prior convictions that have been charged by the prosecutor and, if so, how many prior convictions to strike." (*In re Coley* (2012) 55 Cal.4th 524, 559-560.)

When a trial court has invoked its statutory power to dismiss the strike allegation in order to indicate the sentence it would impose, the court has not engaged in plea bargaining. (See *People v. Allan*, *supra*, 49 Cal.App.4th at p. 1516 [where a court indicates a sentence, "[n]o 'bargaining' is involved because no charges are reduced"].) Accordingly, the Three Strikes law does not restrict a trial court's power to fashion an indicated sentence. (Cf. *People v. Vessell*, *supra*, 36 Cal.App.4th at pp. 289-296 [Three Strikes law does not bar trial court, in providing an indicated sentence, from relying on its authority under section 17, subdivision (b) to reduce a wobbler to a misdemeanor].) Whether the trial court in this case lawfully indicated the sentence it believed was appropriate, or instead offered to dismiss the strike conviction to induce a plea, is for the trial court to clarify when it rehears and reconsiders the plea on remand.

**F. Whether a Defendant May Withdraw a Plea Under the Indicated Sentence Procedure**

In *People v. Superior Court* (*Felmann*), *supra*, 59 Cal.App.3d 270 (*Felmann*), the defendant offered to enter a no-contest plea to four counts each of

grand theft and forgery on the condition that he be sentenced to probation with an order of restitution, a fine, and no jail time. The trial court, noting that the defendant lived with his family, was employed, had a minimal prior record, and suffered from a heart condition, announced that it would accept the plea. (*Id.* at pp. 273-274.) When the People petitioned for a writ to prevent the court "from proceeding further on the conditional plea" (*id.* at p. 274), the Court of Appeal found the record was "ambiguous" as to "whether the trial judge determined to proceed on defendant's conditional plea of no contest solely in the exercise of his sentencing discretion" (i.e., as a proper indicated sentence) or "whether the judge determined to accept an offer of the defendant to enter his plea in return for more lenient treatment than he otherwise would have received" (i.e., as an unlawful plea bargain without the prosecution's consent). (*Id.* at p. 277.) The Court of Appeal directed the trial court to rehear and reconsider the plea in order to resolve this "key factual issue." (*Ibid.*)

The defendant's plea in *Felmann* included a condition that "if after reviewing the probation report the court were not inclined to impose sentence in the terms outlined, the nolo contendere plea could be withdrawn and the matter proceed to trial." (*Felmann*, *supra*, 59 Cal.App.3d at p. 273.) *Felmann* approved this condition as part of the indicated-sentence procedure, stating that if the trial court elects not to impose the indicated sentence, "then defendant has the option of going to trial or accepting the harsher treatment on a guilty or nolo contendere plea." (*Id.* at p. 276; see also *People v. Labora*, *supra*, 190 Cal.App.4th at pp. 916-917; *People v. Delgado* (1993) 16 Cal.App.4th 551, 555; *People v. Superior Court* (*Ramos*), *supra*, 235 Cal.App.3d at p. 1271; *Bryce v. Superior Court* (1988) 205 Cal.App.3d 671, 676, fn. 2.)

Based on *Felmann*, defendant asks us to announce a rule that when a trial court offers an indicated sentence, it must advise the defendant of the opportunity

23

to withdraw the plea if the court later decides not to impose the indicated sentence. The People, on the other hand, asserted at oral argument that although a defendant may "as a practical matter" be allowed to withdraw a plea in most cases, withdrawal is not invariably the appropriate remedy every time the court selects a different punishment.[4] In their view, the withdrawal of a plea when a trial court deviates from the indicated sentence should instead be governed by section 1018, which authorizes a court to permit a plea of guilty to be withdrawn "for a good cause shown." The People acknowledge that section 1018 should be given "a liberal construction . . . in the interest of promoting justice" (*People v. Superior Court* (*Giron*) (1974) 11 Cal.3d 793, 797), but ask us not to foreclose entirely the possibility that the withdrawal of a plea, when a trial court declines to impose the indicated sentence, may *not* promote justice in unusual circumstances.

We decline to resolve here which standard should govern the withdrawal of a plea after a trial court declines to impose the indicated sentence because, as the People also point out, the trial court below did not reject the indicated sentence, nor has defendant ever sought to withdraw his plea. If, on remand to rehear and reconsider the plea, the trial court clarifies that its previously indicated sentence was proper, then its judgment shall be reinstated. If, on the other hand, the disposition was not the product of a lawful indicated sentence, then (as the Court of Appeal majority held) the trial court must vacate defendant's pleas and admissions. In neither instance will it be necessary for the court to consider whether to allow defendant to withdraw his plea.

---

**4**     In the Court of Appeal, the People argued that allowing a defendant to withdraw a plea when the trial court later rejects the indicated sentence "is characteristic of judicial plea bargaining and removes the possibility that a plea resulted from an indicated sentence." On further consideration, however, the People have withdrawn that argument.

**G. If the Judgment Is Reinstated, Defendant's Presentence Credits Must Be Recalculated**

The trial court awarded defendant day-for-day presentence conduct credits of 236 days, using the accelerated rate provided by Penal Code former section 4019.**5**  The trial court believed defendant could be made eligible for credits at this accelerated rate once it dismissed, under section 1385, the disqualifying allegation that defendant had previously suffered a serious or violent felony conviction.  (See former § 4019, subds. (b)(2), (c)(2).)  As defendant now concedes, the trial court erred.  Following the sentencing hearing in this case, we held that section 1385 does not authorize a court to disregard the historical facts that disqualify a local prisoner from earning the accelerated day-for-day conduct credits under former section 4019.  (*People v. Lara* (2012) 54 Cal.4th 896, 900.)

In the event the trial court reinstates its judgment, defendant's presentence conduct credits will need to be recalculated and added to his sentence.  There is one wrinkle, however.  Counsel informs us that defendant has already been discharged from custody.  He asks that the trial court on remand therefore be directed to consider whether returning him to prison to serve the remaining days of his sentence would be unfair under the rule set forth in *People v. Tanner* (1979) 24 Cal.3d 514, 521-522 (*Tanner*).

"In *Tanner*, we concluded that the Legislature did not intend for a firearm-use finding under section 1203.06, which rendered the defendant ineligible for probation, to be subject to the judicial power to dismiss or strike under section 1385.  The trial court, by unlawfully dismissing the probation-ineligibility clause,

---

**5**      (§ 4019, as amended by Stats. 2009, 3d Ex. Sess., ch. 28, § 50; subsequently amended by Stats. 2010, ch. 426, § 2, Stats. 2011, ch. 15, § 482, Stats. 2011, ch. 39, § 53, and Stats. 2011, 1st Ex. Sess., ch. 12, § 35.)

had granted Tanner probation and a one-year jail term, and Tanner had successfully complied with both. (*Tanner*, *supra*, 24 Cal. 3d at pp. 518, 522.) Without explaining whether our decision rested on constitutional grounds or on our inherent powers, we concluded it would be 'unfair' and 'unjust' to require Tanner to serve a second term for his criminal act. (*Id*. at pp. 521-522; but see *People v. Warner* (1978) 20 Cal. 3d 678, 689 [reversing for resentencing upon a finding that the trial court had abused its discretion in granting probation, notwithstanding the possibility that 'defendant may have defied the odds by leading a blameless life during this period'].) In so ruling, we relied entirely on a 'highly similar' case (*Tanner*, *supra*, at p. 521) from the United States Court of Appeals for the Fifth Circuit, *United States v. Denson* (5th Cir. 1979) 588 F.2d 1112, which 'stated, among other things: "These Defendants have been told after such prosecutions and investigations that they would be subjected to one year's incarceration to be followed by five years supervision. They prepared to surrender for such incarceration. They have adjusted their lives to the punishment assessed. They have sought and secured employment opportunities consistent with the term of incarceration imposed. To withdraw the probation granted for which the Defendants and their families have prepared themselves would work a substantial hardship on the Defendants and their families." (*Id*., at p. 1132.)' (*Tanner*, *supra*, 24 Cal. 3d at p. 521.)" (*People v. Statum* (2002) 28 Cal.4th 682, 695-696.)

We have subsequently questioned whether this part of *Tanner* is correct. "Since *Tanner* was decided, we have never relied on it to pretermit the correction of a sentence that was illegally or improperly imposed. This is not surprising. Four months after *Tanner* was decided, the Fifth Circuit Court of Appeals vacated the panel decision on which *Tanner* had relied. The sole purpose of the rehearing in bank was to disavow the passage that *Tanner* had quoted. (*United States v. Denson* (5th Cir. 1979) 603 F.2d 1143, 1145 ['En banc we differ only with that

26

panel's final decision not to issue the writ'].) 'We do not perceive that granting the petition [for writ of mandamus] would work a substantially greater hardship on the defendants than would have been exacted by a lawful sentence imposed initially. The mere fact that the defendants have psychologically prepared themselves for a total of one year's incarceration and may, as a result of our action, have their expectations frustrated does not compel a different result. The trial judge may take into account any difficulties caused by resentencing when he imposes a new and legal sentence just as he may consider any other appropriate factors when they militate toward lenity or severity.' (*Id.* at p. 1148.)

"Like the Fifth Circuit, we cannot discern how the imposition of a harsher sentence on appeal, should that occur, would work a substantially greater hardship on defendant. ' "The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner." ' [Citation.] We are unaware of any authority that provides 'the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be. . . . His legitimate expectations are not defeated if his sentence is increased on appeal any more than are the expectations of the defendant who is placed on parole or probation that is later revoked.' [Citation.]" (*People v. Statum*, *supra*, 28 Cal.4th at p. 696.)

*Statum* also observed that Court of Appeal decisions had subsequently "limited *Tanner* to circumstances in which (1) the defendant has successfully completed an unauthorized grant of probation; (2) the defendant has returned to a law-abiding and productive life; and (3) 'unusual circumstances' generate a 'unique element' of sympathy, such that returning the defendant to jail 'would be more than usually painful or "unfair." ' (*People v. Lockridge* (1993) 12 Cal.App.4th 1752, 1759 [collecting cases].)" (*People v. Statum*, *supra*, 28 Cal.4th at pp. 696-697, fn. 5.) Because the defendant in *Statum* could not satisfy this test,

27

we found it unnecessary to decide whether *Tanner* remained "good law." (*People v. Statum*, *supra*, 28 Cal.4th at p. 697, fn. 5.)

We likewise find it unnecessary here to decide whether *Tanner* remains good law. The unfairness in *Tanner* arose from the prospect of the defendant serving a specified term in prison when he had already "complied with his conditions of probation—including one year's stay in county jail." Under those circumstances, we said "a second incarceration would be unjust." (*Tanner*, *supra*, 24 Cal.3d at p. 522; see also *People v. Holt* (1985) 163 Cal.App.3d 727, 734.) Here, by contrast, even if the trial court reinstates the judgment and recalculates defendant's credits, there is no prospect that Clancey would be asked "to now serve a second term for his criminal act" (*Tanner*, *supra*, 24 Cal.3d at p. 521) or to "suffer a punishment in excess of the legal maximum." (*People v. Statum*, *supra*, 28 Cal.4th at p. 696.) In particular, he would not be asked to serve a term of probation (with a jail term) *and* a prison term. All that occurred here is that his prison term was erroneously *calculated*; the days of credit erroneously awarded were days that he should have—but did not—serve in custody. Because those days were not served in county jail or on probation, no issue of a "second incarceration" or "second term" arises.

Defendant relies also on *In re Messerschmidt* (1980) 104 Cal.App.3d 514, which (in dicta) opined it would be fundamentally unfair to "allow[] a prisoner who has established himself as a productive member of society over a long period of time to have his good work destroyed by recommitment." (*Id.* at p. 516.) We need not decide whether that dicta is correct (see *United States v. Sanders* (6th Cir. 2006) 452 F.3d 572, 577, fn. 4, 582-583 [declining to recognize such a claim under due process]; *Hawkins v. Freeman* (4th Cir. 1999) 195 F.3d 732, 750 [same]), because defendant has not shown that he "*over a prolonged period of time,* [became] a respected, productive, law-abiding member of society."

28

(*Messerschmidt*, *supra*, 104 Cal.App.3d at p. 516, italics added.)  Only five months elapsed between defendant's release from prison in April 2012 and the Attorney General's attempt in this court to correct defendant's sentence.  That brief gap of liberty would not entitle him to extraordinary relief from serving his lawful sentence even under the cases on which he relies.  (Cf. *Johnson v. Williford* (9th Cir. 1982) 682 F.2d 868, 872 [15 months elapsed between the defendant's erroneous release on parole and his arrest; government had misapplied or misinterpreted the parole rule in defendant's favor in "at least eight separate administrative reviews"]; *United States v. Merritt* (D.D.C. 1979) 478 F.Supp. 804, 806 [nearly three years elapsed between release and re-arrest to finish consecutive sentence]; *Derrer v. Anthony* (Ga. 1995) 463 S.E.2d 690, 693 [seven years]; *State v. Kline* (La. 1985) 475 So.2d 1093, 1093 [18 months, during which "the criminal sheriff and district attorney's office were fully aware of the situation and took no action"]; *Commonwealth v. Ly* (Mass. 2007) 875 N.E.2d 840, 843 [16 years].)

## DISPOSITION

We modify the judgment of the Court of Appeal to delete the direction to the trial court "to vacate defendant's pleas and admissions" and provide instead that the trial court shall rehear and reconsider defendant's conditional plea in accordance with the views expressed herein. (See *Felmann*, *supra*, 59 Cal.App.3d at pp. 277-278.) If the plea is accepted, the trial court is to reinstate its judgment, except as to the award of presentence conduct credits, which are to be recalculated. (See *People v. Lara*, *supra*, 54 Cal.4th at p. 900; *People v. Statum*, *supra*, 28 Cal.4th at pp. 696-697, fn. 5.) As so modified, the judgment of the Court of Appeal is affirmed.

BAXTER, J.


WE CONCUR:

CANTIL-SAKAUYE, C.J.
KENNARD, J.
WERDEGAR, J.
CHIN, J.
CORRIGAN, J.
LIU, J.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Clancey

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 202 Cal.App.4th 790
**Rehearing Granted**

_____

**Opinion No.** S200158
**Date Filed:** April 18, 2013

_____

**Court:** Superior
**County:** Santa Clara
**Judge:** Rene Navarro

_____

**Counsel:**

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Eric D. Share, Laurence K. Sullivan and Amy Haddix, Deputy Attorneys General; and Jeffrey Francis Rosen, District Attorney, for Plaintiff and Appellant.

Dallas Sacher, under appointment by the Supreme Court, for Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Laurence K. Sullivan
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
(415) 703-5849

Dallas Sacher
100 N. Winchester Boulevard, Suite 310
Santa Clara, CA  95050
(408) 241-6171