Filed 7/10/13  P. v. Dishmon CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D062205 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD234692) |
| CLIFFORD DISHMON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Charles R. Gill, Judge.  Affirmed.

Carl M. Hancock for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood and Ifeolu E. Hassan, Deputy Attorneys General, for Plaintiff and Respondent.

Clifford Dishmon pled guilty to felony child abuse and admitted to inflicting great bodily injury on a child under the age of five.  At the time of the plea, the court indicated it would place a seven-year "lid" on Dishmon's sentence.  However, after considering

Dishmon's remarks at the sentencing hearing, the court withdrew the indicated sentence and stated it intended to impose a nine-year term. The court gave Dishmon the opportunity to withdraw his guilty plea based on the new intended sentence. Dishmon declined to withdraw his plea. The court then imposed the nine-year sentence.

On appeal, Dishmon contends the trial court abused its discretion in sentencing him to nine years because it was greater than the initial seven-year-maximum indicated sentence. We reject this contention and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

Dishmon punched his five-month-old son, causing a tear in his liver and rendering him unconscious. Dishmon then forcefully shook the infant. About one hour later, Dishmon called 911. The child was diagnosed with a subdural hematoma, bilateral retinal hemorrhages in his eyes, and a lacerated liver. Dishmon initially told police that his son had fallen from a changing table, but later admitted punching and shaking the baby.

Dishmon was charged with felony child abuse and a sentence enhancement for inflicting great bodily injury on a child under the age of five. Dishmon pled guilty to the charge and admitted the alleged enhancement. Dishmon signed the plea form which stated there were "no deals" from the prosecutor but that the court had indicated a seven-year "Lid" on the sentence. The plea form also stated Dishmon "understand[s] that I may receive" a "12 years imprisonment" for the offense. At the hearing, the court repeated the

---

[1]    Our description of the offense is based on information in the probation report. (See *People v. Breslin* (2012) 205 Cal.App.4th 1409, 1412.)

2

seven-year-lid indicated sentence, but Dishmon also verbally acknowledged the maximum sentence could be 12 years.

After the plea, Dishmon underwent a psychological evaluation by psychologist Dr. Erin Ferma. Dr. Ferma concluded that Dishmon did not present "violent or aggressive tendencies" and did not meet the criteria for an antisocial personality disorder. She also opined that Dishmon appeared "genuinely remorseful" for the injuries he had inflicted on his son.

In a mitigation statement, defense counsel requested the court to impose probation or a two-year total sentence. In support, defense counsel stated that Dishmon feels remorseful and takes full responsibility for his actions, and that the incident occurred because Dishmon was "feeling overwhelmed and frustrated" while serving as his son's caregiver.

The probation officer recommended a nine-year term, consisting of the midterm for the child abuse count and the midterm for the great bodily injury enhancement.

At the outset of the sentencing hearing, the court said it had reviewed the entire court file, including the change of plea form, the probation report, the defense mitigation statement, Dr. Ferma's psychological evaluation, letters supporting Dishmon, and a victim impact statement from the injured child's mother. Based on its review of these materials, the court stated it was inclined to sentence Dishmon to a six-year term, but would consider counsels' arguments regarding the appropriate sentence.

In his argument, the prosecutor strongly objected to a six-year term. Emphasizing the seriousness of the offense against a "defenseless" infant, the prosecutor asked the court to follow the probation officer's recommended nine-year sentence.

The infant's mother (Mother) then spoke about her son's recovery and the emotional impact of the crime. She asked, "What kind of a man punches a five-month-old baby, nonetheless [his] own son . . . [and then] waits an hour to call for help while that baby is blacked out?" Dishmon interrupted, declaring the infant was "not [his] son." Amid requests from the court that he remain silent, Dishmon interjected two more times, stating the infant was not his son and adding that Mother was not his wife. When she was allowed to continue, Mother discussed her continuing fear of Dishmon and concern for the safety of her child and asked the court to require Dishmon to remain financially responsible for the child. Mother additionally emphasized the severity of the baby's injuries and her inability to comprehend Dishmon's actions, asking "How could a man behave like a wild animal?" Mother also questioned what she should tell her son when he started asking questions about his dad.

After Mother's statement, the prosecutor requested the court to reconsider its indicated sentence. The prosecutor said he was "extremely concerned based upon the defendant's outburst[s]" that Dishmon "feels no particular remorse over what he did and that there may be some physical danger with regard to either [the child or Mother]." The prosecutor said "[t]hose are the types of comments that are danger signs. And we have to sentence based upon the information we have available today."

4

In his argument, defense counsel urged the court to impose probation or the low term. Defense counsel asserted that Dishmon's comments at the hearing reflected merely his "frustration" arising from his difficult relationship with Mother, and did not show that Dishmon intended to cause any additional harm to Mother or to his son. Defense counsel also focused on Dishmon's lack of prior criminality, the isolated nature of the offense, his acceptance of responsibility, and his remorse. Defense counsel concluded by noting that Dishmon had expressed a desire to address the court, but counsel had "advised him that it was not necessary" and "it might be best for him if he just allows the Court to make its decision based on what we've heard so far."

After the court admonished "that any similar outbursts . . . would not be in [Dishmon's] best interests," Dishmon chose to speak. The following colloquy then occurred:

> "THE DEFENDANT: I've been locked up for almost a year. And before, prior to this to me it's very upsetting that [Mother] would sit down, pretend like I didn't do anything. I pay rent, I pay rent. When she didn't have money coming in, I paid for everything. When the child was born, the father, the brother, they treated me like dirt for no reason. I had a verbal disagreement with him on Facebook even. I found messages from her on Facebook because she has a habit of leaving the computer open, where I found a lengthy message with her and her friend who have their own issues in her relationship, talking negative about me. And the person doesn't even know me.
>
> "THE COURT: Mr. Dishmon, the issue presented to me today is the injury to [the child].
>
> "DEFENDANT: That's fine. I looked at it like this: I'm going to prison. I can do the time. You want to give me 12 [years], that's fine, I will do it.
>
> "THE COURT: Mr. Dishmon, I'm going to suggest—

5

"DEFENDANT: I have no intention [of] even looking for her. It is not my son. She is not my wife. I don't believe it's my son. Every time I held him, he didn't feel like my son.

"THE COURT: I suggest you don't say anything else.

"DEFENDANT: He is not my son.

"THE COURT: I advise you not to speak anymore.

"DEFENDANT: I have no intention of looking for her forever. I don't care what she does or who she goes with. It's done I don't care.

"THE COURT: Mr. Dishmon, I have heard enough. Stop talking.

"DEFENDANT: The feeling is mutual.

"THE COURT: Stop talking.

"DEFENDANT: Her statement does not move me at all.

"THE COURT: Mr. Dishmon, if you continue to talk, I will have you removed from the courtroom. Do you understand that?

"THE DEFENDANT: That's fine. The feeling is mutual.

"THE COURT: Anything else, [defense counsel]?

"THE DEFENDANT: Fucking liars."

After further argument by counsel and a brief recess, the court informed the parties that it had decided to modify its indicated sentence, explaining: "I placed a lid of seven years on [Dishmon's] plea of guilty in his case and feel, based on [Dishmon's] outbursts and his apparent lack of remorse, as well as his lack of understanding of the seriousness of the charge to which he pled guilty, that I can no longer honor the seven-year lid I gave." The trial court then continued the sentencing hearing.

6

At the continued hearing held several months later, the court stated it now intended to follow the probation officer's recommendation of a nine-year sentence. The court gave Dishmon the opportunity to withdraw his plea and return the case to the pretrial stage, but Dishmon declined. Both counsel then submitted the matter. After stating it had reread all the relevant information in the file and considered counsels' prior arguments, the court found the mitigating factors balanced the aggravating factors and imposed a nine-year term, consisting of middle terms for the offense and the enhancement.

DISCUSSION

Dishmon contends the trial court erred because it refused to adhere to the indicated seven-year-maximum sentence.

I. *Applicable Legal Principles*

The California Supreme Court recently reaffirmed the long-established rule that an indicated sentence is not a promise of any particular sentencing result. (*People v. Clancey* (2013) 56 Cal.4th 562, 576-577 (*Clancey*).) In an indicated sentence, a defendant admits all charges and the trial court informs the defendant " ' "what sentence [it] will impose *if a given set of facts is confirmed . . . .*" [Citation.]' [Citation.]" (*Id.* at p. 570, italics added; *People v. Allan* (1996) 49 Cal.App.4th 1507, 1516.) Thus, if the factual predicate underlying the indicated sentence is disproved, the court may withdraw the indicated sentence. (*Clancey, supra*, 56 Cal.4th at p. 576; *People v. Superior Court (Ramos)* (1991) 235 Cal.App.3d 1261, 1271.)

7

Additionally, a trial court retains broad discretion to modify an intended sentence even if the factual predicate is not disproved.  (*Clancey, supra*, 56 Cal.4th at pp. 576-577.)  For example, the court may depart from an indicated sentence based on additional new information or based on a reexamination of the relevant circumstances.  (*Id.* at p. 576.)  "The development of new information at sentencing may persuade the trial court that the sentence previously indicated is no longer appropriate for this defendant or these offenses.  Or, after considering the available information more carefully, the trial court may likewise conclude that the indicated sentence is not appropriate."  (*Ibid*.)

Thus, after providing an indicated sentence, the trial court retains its full discretion at the sentencing hearing to select a fair and just punishment.  (*Clancey, supra*, 56 Cal.4th. 562.)  "[A]n indicated sentence is not a promise that a particular sentence *will* ultimately be imposed at sentencing.  Nor does it divest a trial court of its ability to exercise its discretion at the sentencing hearing, whether based on the evidence and argument presented by the parties or on a more careful and refined judgment as to the appropriate sentence.  . . . [T]he utility of the indicated-sentence procedure . . . depends to a great extent on whether the record then before the court contains the information about the defendant and the defendant's offenses that is relevant to sentencing."  (*Clancey, supra*, at p. 576; accord, *People v. Delgado* (1993) 16 Cal.App.4th 551, 555.)

Mindful of the court's broad discretion in modifying an intended sentence, we consider Dishmon's arguments that the court abused its discretion in this case.

8

II. *Analysis*

The trial court stated it modified its indicated sentence based on new information showing Dishmon was not remorseful and had not appreciated the seriousness of his offense. These are appropriate factors to consider in sentencing and the record fully supports the court's factual conclusions.

At the hearing, Dishmon expressed extreme anger at Mother, called Mother and the prosecutor "[f]ucking liars," stated he does not care and was not "move[d]" by Mother's emotional statements about the infant's injuries, and indicated a complete disregard for the baby's welfare. These comments can be reasonably understood as reflecting an absence of remorse and a refusal to take responsibility for his actions. Likewise, repeatedly interrupting the court and refusing to follow the court's directions illustrates Dishmon's disrespect for the proceedings and supports that Dishmon lacked appreciation for the seriousness of his conduct.

The court reasonably relied on Dishmon's outbursts and conduct as the basis to modify the indicated sentence. At the outset of the hearing, the court stated it was basing its indicated sentence on the materials reviewed, which included the opinions of the psychiatrist and defense counsel that Dishmon felt remorse for the crime and that he understood the seriousness of his offense. After considering Dishmon's remarks, the court had a reasonable basis to disagree with these opinions and conclude that Dishmon felt no remorse for his crime and did not appreciate the serious nature of his actions. As the California Supreme Court has noted, "the presence or absence of remorse may be

9

considered as relevant to the evaluation of mitigating evidence and to the penalty determination." (*People v. Davis* (2009) 46 Cal.4th 539, 620.)

Dishmon does not argue that the court could not use the absence of remorse or the lack of understanding of the seriousness of the offense as grounds to change the indicated sentence. Instead, he challenges the court's factual inferences and conclusions. He contends the trial court misconstrued his outbursts and that he was merely attempting to respond to Mother's claims that he was a " 'wild animal' " who did not financially support the family and had resorted to " 'violent actions' to 'escape his responsibilities.' "

However, even assuming the court could have reached a factual conclusion that Dishmon's statements constituted only an attempt to rebut false accusations against him, the court was not required to do so. Where, as here, the court's factual conclusions are reasonable and based on the record before it, we credit those conclusions, even if other factual inferences are possible. The experienced trial judge was in the best position to evaluate the meaning of Dishmon's statements, including by considering his words, the tone of his remarks, and his facial expressions and body language. Based on a totality of the circumstances, the court interpreted Dishmon's statements as reflecting a lack of remorse and a lack of concern for his criminal conduct and concluded that its prior assumptions about Dishmon were false. The court's conclusions were reasonable.

Dishmon's suggestion that *People v. Delgado, supra*, 16 Cal.App.4th 551 supports his arguments is without merit. In *Delgado*, the trial court withdrew the original indicated sentence because of an objectively demonstrable change in facts (the court's learning of two prior prison terms). (*Id.* at p. 553.) The reviewing court rejected the

defendant's arguments that the court erred, emphasizing that an "indicated sentence is just that: an indication. Until sentence is actually imposed, no guarantee is being made." (*Id.* at p. 555.)

This case is indistinguishable. As in *Delgado*, the court withdrew the original indicated sentence because of information showing the relevant facts were different than the court had previously believed. The fact that the new information was based on the defendant's statements rather than on a documented prison sentence is a distinction without a material difference. In this case, as in *Delgado*, the trial court properly exercised its discretion when it modified the indicated sentence because it found the factual predicate underlying the seven-year lid to be false.

Finally, any error was waived because the trial court properly provided Dishmon the opportunity to withdraw his plea when the court modified its indicated sentence. Dishmon declined to do so, knowing of the new indicated nine-year sentence and understanding he was facing a maximum 12-year sentence. We reject Dishmon's argument that the specific performance remedy is available under these circumstances. As noted in *Delgado*, "Even if the first indicated offer was a *guaranteed* sentence, which it was not, '[t]he goal in providing a remedy for breach of the bargain is to redress the harm caused by the violation *without . . . curtailing the normal sentencing discretion of the trial judge. . . .*' . . . To order the court to specifically perform . . . would [improperly] 'curtail[] the normal sentencing discretion of the trial judge.' " (*People v. Delgado, supra*, 16 Cal.App.4th at p. 555.)

11

DISPOSITION

The judgment is affirmed.


HALLER, J.

WE CONCUR:


NARES, Acting P. J.


AARON, J.