Filed 4/20/15  P. v. Rivera CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>ELMER RODRIGUEZ RIVERA,<br><br>      Defendant and Appellant. | A142546<br><br>(San Mateo County<br>Super. Ct. No. SC079922A) |

Elmer Rivera was arrested and charged with 17 felony counts after he assaulted a cohabitating girlfriend, T.A., on two separate occasions.  On both occasions he also threatened her verbally and with a knife.  Rivera pleaded no contest to three counts and admitted allegations associated with one of those counts.  The court dismissed the remaining counts.

Before Rivera entered his no contest pleas, the court declared an intended sentence of eight years and eight months in state prison, with a ten-year order that he have no contact with T.A.  Prior to sentencing, the People requested that the court sentence Rivera to 10 years in state prison, primarily because Rivera had continued regular telephone contact with T.A., during which he was manipulative and controlling, despite a no contact order that was already in effect.  At sentencing, the court sentenced Rivera to 10 years in state prison and entered the ten-year no contact order.

Rivera's appointed appellate counsel has filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) (see *Anders v. California* (1967) 386 U.S. 738 (*Anders*)), in which he raises no issue for appeal and asks this court for an independent review of the

1

record.  (See *People v. Kelly* (2006) 40 Cal.4th 106, 124 (*Kelly*).)  In addition, Rivera has exercised his right to inform us of issues that he would like us to consider.

We have examined the entire record in accordance with *Wende*.  We agree with counsel that no arguable issue exists on appeal and affirm.

## BACKGROUND

### I.  *Factual Background*[1]

T.A. began dating Rivera about June 2013.  In September 2013, T.A. moved into the trailer in which Rivera and his mother lived.  In November 2013, T.A. was pregnant with Rivera's child.

On November 9, 2013, Rivera became upset with T.A. after they came home from a party.  Rivera began slapping T.A. in the head and face, giving her a bloody nose.  He forced T.A. to take a shower, and afterwards he had her lie on the floor.  Rivera straddled T.A., held a large kitchen knife to her throat, and told her that he was going to kill her.  T.A. feared for her life.

On November 27, 2013, T.A. left the house to shop for groceries and did not return until November 29.  She was afraid to go home because she feared Rivera would hit her.  When she returned home, Rivera punched her in the face more than 20 times.  She began bleeding from her lip and nose.  Six times Rivera "pressed down the front of her throat so she had a hard time breathing and he actually grabbed her throat and twisted it as he pushed into her throat."  Rivera also held a knife to the sides of T.A.'s throat about four times because he wanted her to cease screaming.  He told her "Shut the fuck up or I'm going to kill you.  I swear to God I'm going to kill you."

Rivera told her to take a shower.  While she was in the shower, Rivera took a small knife and held it up to her neck.  Rivera told T.A. he was going to kill her.  T.A. was scared and feared for her life.  Rivera pulled his hand back as if to stab her, but dropped the knife and punched her in the face.  Rivera told her "Call your family 'cause

---

[1] Background facts are derived from the preliminary hearing testimony of the victim, T.A., and Officer Michael Ruybal, who interviewed T.A.

tonight you're going to die." Rivera stopped abusing Rivera when his mother arrived and called the police.

T.A. went to the hospital the next day.[2] T.A. had pain in her nose, swelling around the eyes and an injury to her lip. At the hospital, T.A. spoke to Officer Ruybal.

## II. *Procedural Background*

On January 17, 2014, the People filed an information charging Rivera with two counts of corporal injury on a cohabitant (Pen. Code, § 273.5, subd. (a)[3]) (counts 1 and 15); six counts of assault with a deadly weapon (§ 245, subd. (a)(1)) (counts 2-6 and 16); six counts of assault by means of force likely to cause great bodily injury (§ 245, subd. (a)(4)) (counts 7-12); two counts of criminal threats (§ 422) (counts 13 and 17); and one count of false imprisonment (§ 236) (count 14). As to count 1, the information alleged four enhancements: (1) great bodily injury (§ 12022.7, subd. (e)); (2) personal use of a deadly weapon (§ 12022, subd. (b)(1)); (3) personal infliction of great bodily injury (§ 1192.7, subd. (c)(8)); and (4) personal use of a dangerous or deadly weapon (§ 1192.7, subd. (c)(23)). As to count 17, the information alleged personal use of a deadly weapon (§ 12022, subd. (b)(1)).

On January 23, 2014, Rivera pleaded not guilty and denied all allegations.

On May 9, 2014, Rivera entered a negotiated plea of no contest to counts 1, 13 and 16 and admitted the four allegations as to count 1. A declaration concerning the change of plea was signed by Rivera, his counsel and the prosecutor and presented to the court. This declaration indicated that the court had communicated an intended sentence of eight years and eight months to the parties, as well as a ten-year no contact order. Following a colloquy with Rivera, the court found that Rivera had made a free, knowing and intelligent waiver of his statutory and constitutional rights and ordered that the declaration be filed. During the colloquy, the court stated that it "has indicated that you will be sentenced to no more than eight years eight months in state prison with a ten year

---

[2] Photographs of the injuries to T.A.'s face were entered into evidence at the preliminary hearing.

[3] Further statutory citations are to the Penal Code.

no [contact] order with the victim." The court found Rivera guilty on counts 1, 13 and 16, and dismissed the remainder of the counts on the motion of the prosecution.

On July 10, 2014, the People filed a sentencing memorandum in which it urged the court to sentence Rivera to 10 years in state prison, primarily because after his change of plea Rivera had continued to have routine telephone contact with T.A., despite an order that he have no contact with her.[4] According to the People, the content of the calls showed that Rivera "continued to engage in a verbal cycle of violence and control" and that he was "manipulative and controlling and at times vehemently expresse[d] fierce rage and anger towards [T.A.]." The People included a photograph, showing the injuries that T.A. had sustained to her face, as an attachment to the memorandum.

At Rivera's sentencing hearing on July 17, 2014, the court stated: "I will be quite honest. This is one of the worst cases I have ever seen. The level of violence and brutality is terrible. The defendant's record is terrible. He violated a court order by contacting the victim. The injuries were—the picture, which is attached to the District Attorney's brief, is just worth a thousand words. It is just terrible. . . . I have never at this point gone above an indicated sentence in my career as a Criminal Presiding Judge, but in view of all the factors in this case, I am going to do that. I am going to follow what the People say for the reasons that I just indicated." The court sentenced Rivera to 10 years in state prison—four years for count 1, plus five years for the section 12022.7, subdivision (e) enhancement, plus one year for the section 12022, subdivision (b)(1) enhancement.[5] The court also ordered that Rivera have no contact with T.A. for 10 years.

Rivera timely filed a notice of appeal on July 24, 2014.

---

[4] The presentencing probation report on Rivera stated: "According to CII records, there is a no Contact Order with the victim in the current case. This order expires on December 2, 2016."

[5] The court imposed concurrent terms of two years and three years for counts 13 and 16 respectively.

## DISCUSSION

Rivera's appellate counsel's opening brief was filed in accordance with *Wende*. The *Wende* court held: "We conclude that *Anders* requires the court to conduct a review of the entire record whenever appointed counsel submits a brief which raises no specific issues or describes the appeal as frivolous." (*Wende*, *supra*, 25 Cal.3d at p. 441.) Rivera, as is his right, has submitted a supplemental list of issues that he asks us to consider. When specific issues are raised by the appellant himself in a *Wende* proceeding we must expressly address them in our opinion and explain why they fail. (*Kelly*, *supra*, 40 Cal.4th at pp. 120-121.)

The issues that Rivera raises are briefly stated in a list of bullet points. We provide each point as Rivera states it and explain why it does not raise an arguable issue on appeal.

(1) "Their in fact is no 'new' information that withdrew my plea deal of a sentence of no more than 8 years 8 months." New information is not required for a court to deviate from an intended sentence. An intended sentence does not "divest a trial court of its ability to exercise its discretion at the sentencing hearing, whether based on the evidence and argument presented by the parties or on a more careful and refined judgment as to the appropriate evidence." (*People v. Clancey* (2013) 56 Cal.4th 562, 576 (*Clancey*).)

(2) "The court abused its discretion of imposing its upper terms. DA knew before offering me my deal of (the no contact order violation) THEN she offered me the deal." Whether or not Rivera's violation of his no contact order was known to the prosecution at the time of plea negotiation, the trial court's discretion at sentencing is not affected. (*Clancey*, *supra*, 56 Cal.4th at p. 576.) In any case, nothing in the record demonstrates that the People knew of the violations at the time of plea negotiation. Moreover, the primary focus of the People's sentencing memorandum was Rivera's continued contact with T.A. *after* he entered his change of plea.

(3) "If the plea deal clearly say NO MORE THAN then why did they even say it?" Rivera's declaration regarding his change of plea did note the court's indicated

5

sentence of no more than eight years and eight months.  However, "an indicated sentence is not a promise that a particular sentence *will* ultimately be imposed at sentencing." (*Clancey*, *supra*, 56 Cal.4th at p. 576.)  The declaration also states:  "I do understand that the matter of probation and sentence is to be determined solely by the Court and will not be decided until the report and recommendation by the Probation Department has been considered."  Thus, Rivera must have understood that the indicated sentence was not a guarantee of the sentence he would receive.

(4)  "My Record is terrible (Juvenile)."  This raises no arguable issue.

(5)  "If they gave me my MAX, then why does it say I got an exchange of 11 years 8 months for 8 years 8 months.  I got 10 YEARS my MAX.  So I did not have a Max of 11 years 8 months."  To the extent that Rivera again raises the fact that his actual sentence exceeded the intended sentence, we have already dealt with the issue.  Rivera's declaration regarding his change of plea reflected his understanding that his maximum potential sentence was 11 years and eight months.  We do not know how that term was calculated, but we calculate Rivera's potential maximum sentence at 14 years.[6]  That the crimes to which Rivera pleaded no contest carried a greater maximum penalty than was stated in his declaration could not have prejudiced him.

(6)  "Many confusions on 'NO contact Order' 'Restraining Order' Expired in 3 weeks."  Rivera seems to be making an argument that he did not know that he was prohibited from contacting T.A.  As we have already noted, Rivera's probation report indicates that a no contact order was in effect.  Rivera made no challenge to the probation report at sentencing, nor did he inform the court that he did not know a no contact order was in effect.  "It is settled that failure to object and make an offer of proof at the

---

[6]  Instead of sentencing Rivera to a concurrent mid-term sentence of three years on count 16, the court could have sentenced Rivera to a consecutive aggravated term of four years on that count, which was associated with Rivera's November 9, 2013 beating of T.A.  (Counts 1 and 13 were associated with the November 29, 2013 beating.)  Thus, Rivera's sentence could have been 14 years in state prison.

sentencing hearing concerning alleged errors or omissions in the probation report waives the claim on appeal." (*People v. Welch* (1993) 5 Cal.4th 228, 234.)

(7) "I was lied to to plead NOLO contest with an indicated sentence of NO more than 8 years 8 months. And got more. If I knew I was facing 10 years, or it was in the air I would of *never* plead NOLO CONTEST." To preserve for appeal an argument that the indicated sentence was used to induce a change of plea and that the trial court thus "entered into an improper plea bargain," an objection on that basis must be made in the trial court. (*Clancey*, *supra*, 56 Cal.4th at p. 578.)

(8) "D.A. Cops suppressed evidence to my benefit. (TEXTS, PICS, PHONECALLS)" Nothing in the record before us suggests that the People suppressed any evidence.

(9) "Was DRUNK." The counts to which Rivera pleaded no contest are general intent crimes, for which voluntary intoxication is not a defense. (§ 29.4.) In any case, Rivera forfeited consideration of any defenses he might have by pleading no contest.

(10) "ATTORNEY WAS NEVER AT ALL HELPFUL (UNEFFECTIVE COUNSEL) - Never got me PI" Nothing in the record demonstrates that Rivera's defense counsel provided ineffective assistance. The record does not show whether defense counsel applied for assignment of an investigator to Rivera's case. Nor does the record show that there was any reason to request an investigator.

We have reviewed the record and considered Rivera's issues in accordance with our obligations under *Wende*, *Anders* and *Kelly*. We find no arguable issues on appeal.

**DISPOSITION**

The judgment is affirmed.

7

_____

STEWART, J.

We concur.

_____

KLINE, P.J.

_____

RICHMAN, J.