Filed 1/26/21  P. v. Ricketts CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E073578 |
| v. | (Super.Ct.No. RIF103852) |
| JON-PIERRE DANDRAUX RICKETTS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  David A. Gunn, Judge. Affirmed with directions.

Lynda A. Romero, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

1

**FACTUAL AND PROCEDURAL HISTORY**

A.    PROCEDURAL HISTORY

On March 22, 2006, a jury convicted defendant and appellant Jon Pierre Dandraux Ricketts of premeditated attempted murder under Penal Code[1] sections 664, 187 (count 1); assault with a deadly weapon under section 245, subdivision (b) (count 2); discharge of a firearm from a motor vehicle under section 12034, subdivision (c) (count 3); and being a felon in possession of a firearm under section 12021, subdivision (a) (count 4). The jury found true allegations that (1) race was a substantial motivating factor in committing the crimes under former section 422.75 for counts 1 through 3; (2) defendant committed the crimes with the intent to promote, further, or assist a criminal gang under section 186.22, subdivision (b), for counts 2 and 3; (3) defendant knowingly failed to register his gang-related conviction under section 186.33, subdivision (b), for count 4; (4) defendant personally used a firearm under section 12022.5, subdivision (a), for count 2; (5) defendant was a principal and a principal personally and intentionally discharged a firearm causing great bodily injury under section 12022.53, subdivisions (d), and (e)(1), for counts 1 through 3; and (6) defendant personally inflicted great bodily injury on a person who was not an accomplice under section 12022.5, subdivision (a), for count 2. (*People v. Ricketts* (Dec. 15. 2008, Unpub. Opn.) E040370, 2008 Cal.App.Unpub. LEXIS 10062 *1-*2 (*Ricketts1*).)

---

[1]  All further statutory references are to the Penal Code unless otherwise specified.

On April 20. 2006, the trial court sentenced defendant to state prison for a total term of 81 years eight months to life as follows:  15 years to life plus 25 years to life under section 12022.53, subdivision (d), and four years under section 422.75, subdivision (c), for count 1; nine years plus three years under section 12022.7, subdivision (a), four years under section 422.75, subdivision (c), and 10 years under section 186.22, subdivision (b), for count 2; eight months plus one year under section 186.33, subdivision (b), for count 4.  The court imposed and stayed sentencing on all remaining counts and true findings.  (*Ricketts1*, *supra*, 2008 Cal.App.Unpub. LEXIS 10062, *1-*2)

After defendant appealed, we struck the true finding that race was a substantial factor with respect to count 2 and vacated the corresponding four-year sentence.  In all other respects, we affirmed the judgment.  We directed the trial court to modify the abstract of judgment accordingly.  (*Ricketts1*, *supra*, 2008 Cal.App.Unpub. LEXIS 10062, *85.)  On August 8, 2009, the trial court modified defendant's sentence to 77 years eight months to life;

On September 14, 2018, the Department of Corrections and Rehabilitation (CDCR) wrote a letter recommending resentencing defendant's conviction under section 245, subdivision (b) (assault with a semiautomatic firearm) and accompanying enhancements under *People v. Gonzalez* (2009) 178 Cal.App.4th 1325.  This letter was filed with the court on September 24, 2018.

Almost one year later, on August 21, 2019, defendant filed a resentencing brief and asked the court to stay the enhancement under section 12022.7, subdivision (a), the lesser of the two enhancements, as to count 2 under *People v. Gonzalez, supra*, 178

Cal.App.4th 1325. Defendant also asked the court to strike the enhancement under section 422.75, subdivision (c), as to count 2 pursuant to this court's decision on his direct appeal because the abstract of judgment still indicated that the enhancement was stayed. Moreover, defendant asked the court to exercise its new discretion under Senate Bill No. 620 to strike or dismiss one or more of the enhancements under sections 12022.5 and 12022.53. In exercising that discretion, defendant requested that the court consider the "whole host of post-conviction factors" under Assembly Bill No. 1812 "to determine if such resentencing would be in the interest of justice."

On August 28. 2019, the trial court resentenced defendant to a term of 24 years eight months plus 40 years to life in prison, for a total term of 64 years eight months to life.[2] The court stayed the enhancement under section 12022.7, subdivision (a), under *Gonzales*, as recommended by the CDCR and without objection from the People, and struck the enhancement under section 422.75, subdivision (c), pursuant to our remittitur. Furthermore, the trial court exercised its discretion and struck the enhancement under section 12022.5, subdivision (a)(1), and the accompanying 10-year term as to count 2. The trial court declined to strike the other gun enhancements.

On September 3, 2019, defendant filed a timely notice of appeal.

---

[2] At the hearing on August 28, 2019, the court pronounced the sentence as 67 years eight months. By minute order dated September 20, 2019, the trial court found "the minute order dated 08/28/2019 does not correctly/clearly reflect the court order and orders it corrected Nunc Pro Tunc. The correction indicates defendant "Sentenced to State Prison for a determinate sentence of 24 yrs 8 mos plus indeterminate sentence of 40 yrs to Life."

4

B.    <u>FACTUAL HISTORY</u>[3]

"This case arises from a drive-by shooting on May 30, 2002, on Linden Street in Riverside.  Jamil Johnson, one of the passengers in the car, testified at trial for the prosecution after entering into a plea agreement.  The following background is based primarily on his testimony.

"In April 2002, Johnson, Hale[4], and Scott[5] became members of the 1200 Blocc Crips gang (1200 Blocc).  1200 Blocc is a predominantly Black gang and a rival of a Hispanic gang, Eastside Riva or 'ESR.'  The tension between the two gangs was particularly high in early 2002 when, according to Johnson, there were 'a lot of shootings going on.'

"On the afternoon of May 30, 2002, Scott was driving his car and Johnson was his passenger.  They drove past a pickup truck with people inside who Johnson described as 'Mexicans,' and who he assumed were members of ESR.  The people in the truck stared at, or 'mad-dogged,' them as they drove by; Scott and Johnson mad-dogged them back. The truck made a U-turn and pulled up behind Scott's car.  After Scott sped up to get away, he was pulled over by the police for speeding.

---

[3] The facts underlying defendant's conviction are from our opinion in *Rickets I*, *supra*, 2008 Cal.App.Unpub. LEXIS 10062.

[4] Codefendant Charles Lenard Hale, Jr.

[5] Codefendant Derrick Anthony Scott.

"Scott and Johnson then picked up Hale and drove to Bordwell Park, a gathering spot for 1200 Blocc members. Ricketts, a 1200 Blocc member, was there. Ricketts had been released from prison four days earlier after serving a sentence for auto theft. His gang moniker is 'Money.' Scott, Johnson, Hale, and Ricketts were together in an area of the park that had covered picnic tables. They talked and drank beer. According to Johnson, they did not discuss the incident involving the Mexicans in the truck and did not talk about going 'to shoot any Mexicans.'

"At the park, Ricketts showed the others a nine-millimeter semiautomatic gun in his waistband. Johnson had previously seen Scott with the same gun. When a police car drove by the park, Ricketts placed the gun on top of a covering over the picnic tables. After the police left the area, Ricketts retrieved the gun.

"Scott, Ricketts, Johnson, and Hale got into Scott's car to go to 'Bobcat's' house. Ricketts asked if he could 'ride shotgun.' Johnson, who was previously in the front seat, let Ricketts get into the front passenger seat because Ricketts was 'bigger and needs more room.' Scott drove, Johnson sat behind Scott, and Hale sat behind Ricketts. Along the way, Ricketts told the others: 'I'm going to turn you guys into riders.' A 'rider,' Johnson explained, is someone who participates in criminal activity with a gang and supports the gang 'to the fullest.'

"Bobcat lives on Cranford Avenue. To get to Bobcat's house from Bordwell Park, they would 'normally take University' Avenue, but would sometimes take Linden Street. On this occasion, there was no discussion about taking a particular route to get to Bobcat's house. At trial, Johnson offered a possible explanation: University Avenue was

being patrolled by the police at that time and, because Ricketts was carrying a gun, he (if he was making the decision) would use Linden Street instead of University Avenue to avoid being pulled over by the police. The part of Linden Street they would use to get to Bobcat's house is within ESR's territory.

"On Linden Street, Gilbert Mauricio and Cecilia Govea were standing outside an apartment building. Mauricio is described by Johnson as 'a Mexican dude,' and Govea as a 'Mexican.' Scott drove slowly past them. Mauricio mad-dogged them and Johnson mad-dogged him back. Ricketts told Scott to make a U-turn and said that he was going to 'have his hat.' Johnson understood this to mean that Ricketts intended to kill him. Scott made the U-turn. Ricketts pulled the gun out of his waistband. Scott stopped the car near Mauricio. Ricketts fired several shots toward Mauricio. Mauricio threw Govea to the ground and covered her with his body. One of the bullets hit S.C., a four-year-old boy, in the foot. As the car drove away, Ricketts yelled, 'Money Loc, East Coast.'

"According to Johnson, the shooting was not planned and it was a 'big surprise' to see Ricketts pull the gun out on Linden Street and start shooting. He said that Hale also appeared surprised. When the shooting began, Johnson and Hale dove 'for the floorboards in the back seat.'

"After the shooting, Scott drove them to 'Esco's' house. Esco is a 'shot-caller' or the Georgia Street Mob or 'GSM,' and a 'big-time gang member.' GSM is affiliated with, or a subset of, 1200 Blocc. At Esco's house, Ricketts gave the gun to someone, then used bleach to wash the side of the car and his hands and arms to get rid of gunpowder residue.

"After leaving Esco's house, they drove to Bobcat's house and then to a movie theater. They planned to 'sneak' into the theater to look for movie ticket stubs they could use to build an alibi. When they were unsuccessful, they drove to Johnson's house. Ricketts told the others, 'nobody better not snitch.' When they arrived at Johnson's house, they were arrested." (*Ricketts*, *supra*, 2008 Cal.App.Unpub. LEXIS 10062, *2-*7.)

## DISCUSSION

A.     THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DECLINING TO STRIKE DEFENDANT'S GUN ENHANCEMENTS

Defendant contends that "the trial court erred in declining to strike the Penal Code section 12022.53 firearm enhancement." For the reason set forth *post*, we disagree with defendant and find that the court did not abuse its discretion in declining to strike the enhancement.

Senate Bill 620, effective January 1, 2018, amended section 12022.53, subdivision (h), to give trial courts discretion to strike firearm enhancements in the interest of justice. As amended, section 12022.53, subdivision (h), provides: "The court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section." Section 12022.5 was similarly amended. Subdivision (c) of section 12022.5 states: "The court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section."

8

Moreover, "[a] trial court's power to dismiss under section 1385 may be exercised only ' "in furtherance of justice,' " which mandates consideration of ' "the constitutional rights of the defendant, and *the interests of society represented by the People*.' " ' (*People v. Clancey* (2013) 56 Cal.4th 562, 280; accord *People v. Hatch* (2000) 22 Cal.4th 260, 268.) "At the very least, the reason for dismissal must be 'that which would motivate a reasonable judge.' " (*People v. Orin* (1975) 13 Cal.3rd 937, 945; accord, *Clancey*, at pp. 580-581.) "[A] court's exercise of this power is subject to review for abuse of discretion." (*Clancey*, at p. 581; see also *People v. Carmony* (2004) 33 Cal.4th 367, 376.) "Where, as here, a discretionary power is . . . by express statute vested in the trial judge, his or her exercise of that wide discretion must not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Jordan* (1986) 42 Cal.3rd 308, 316.)

Here, after we modified defendant's judgment on direct appeal, his sentence included the following gun enhancements: (1) consecutive 25 years to life for a principal's personal and intentional discharge of a firearm causing great bodily injury under section 12022.53, subdivisions (d) and (e), as to count 1; (2) a consecutive 10-year term for defendant's personal use of a firearm under section 12022.5, subdivision (a), as to count 2; and (3) stayed terms for a principal's personal and intentional discharge of a firearm causing great bodily injury under section 12022.53, subdivisions (d) and (e)(1), as to count 3.

In defendant's resentencing brief, he argued several factors in support of striking one or more of his gun enhancements under sections 12022.5 and 12022.53, including the absence of a prior strike conviction in his record before this case, his young age at the time of the underlying case, the lengthy original term imposed, and his demonstrated willingness to participate in the rehabilitative programs in prison. Defendant also attached his completion certificates and other documents relating to programs in which had been involved in prison.

At the resentencing hearing on August 28, 2019, defendant called three witnesses: two correctional officers and his mother. They testified that they believed defendant had been reformed while he was in prison. Defendant also took the stand and testified that he had changed and had taken responsibility for his conduct.

The People asked the trial court to consider the underlying criminal conduct, which occurred in an area with several children present, in addition to the adult victims. Defendant did not "care at that time" when he decided to "shoot up an area."

The trial court stated that it had considered defendant's resentencing brief and other documents in the underlying case, including the police report and original probation report. The court recognized the progress defendant had made and based on that "good work," the court struck the 10-year enhancement under section 12022.5, subdivision (a), as to count 2, and the consecutive 10-year term. The court, however, declined to strike the remaining gun enhancement. The court noted that defendant's underlying conduct was extremely serious and his punishment, as modified at the resentencing, still needed to "fit the crime." The court stated that defendant had only been out of prison for four days

10

when he "swayed a handgun" around and shot at victims in a public area. The court then went on to state: "I recognize my discretion to strike all of those [enhancements]. At the same time, I think I've listed aspects of the crime which I feel, again, the Court appropriately considered when sentencing Mr. Ricketts in the first place. Again, this is a violent, senseless crime that resulted in injury to a four-year-old victim. [¶] Again, I think that the gun enhancements are appropriate, the ones that I'm leaving in place."

Notwithstanding the trial court's detailed reasons for striking one enhancement but declining to strike the other enhancements, defendant argues that the court abused its discretion because it failed to consider the "entire picture." In his reply brief, defendant again argues that the trial court abused its discretion "because the circumstances in this case, especially when considering appellant's years long rehabilitative efforts, reflect appellant's overall sentence for the instant attempted murder conviction is now unjust." In essence, defendant is asking us to reweigh the evidence of the factors in mitigation because the People and "the trial court below placed great consideration on the facts involved in the underlying offense." We disagree. As noted above, the trial court acknowledged considering the facts of the underlying case in addition to all the evidence provided regarding the factors in mitigation. This is precisely the reason why the trial court decided to exercise its discretion and strike one of the gun enhancements.

Based on the evidence and the transcript of the hearing on the resentencing, we cannot find that the trial court's decision was arbitrary, capricious or patently absurd. We therefore find that the trial court properly exercised its discretion in declining to strike the firearm enhancements under section 12202.53.

11

B.       <u>DEFENDANT HAS FORFEITED HIS CHALLENGE TO THE</u>

       <u>RESTITUTION FINE</u>

Defendant contends that the trial court's imposition of a restitution fine without holding a hearing to determine defendant's ability to pay should be stayed.  Defendant argues that "[i]mposing the restitution fine violated [defendant]'s right to due process. (*People v. Dueñas* (2019) 30 Cal.App.5th 1157, 1168, 1172; see also U.S. Const., 5th & 14th Amends.; Cal. Const., art. I, § 15.)"  The People claim that defendant has forfeited his claim because he failed to raise it first in the trial court.

In this case, the trial court imposed a $5,000 section 1202.4 restitution fine at the original sentencing hearing in 2006.  The court also imposed and suspended a $5,000 parole revocation fine under section 1202.45.  The trial court did not hold a hearing to determine defendant's ability to pay the fines.  Moreover, at the resentencing hearing in 2019, the trial court did not discuss any fines and fees, and maintained the restitution fine at $5,000, as imposed originally.

In *People v. Dueñas*, 30 Cal.App.5th 1157, the court held, in pertinent part, that the imposition of a restitution fine, without a determination that the defendant has the present ability to pay the fine, violates a defendant's due process rights under the state and federal Constitutions.  (*Id.* at p. 1172.)  The People contend that, because defendant did not raise his claims in the trial court, his argument has been forfeited.  We agree with the People.

In *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, Division 1 of our district addressed the emerging body of case law regarding *Dueñas* and forfeiture of restitution

12

fines.  The court pointed out that there exists a potential split in authority on *Dueñas* and forfeiture principals.  At least two cases, *People v. Castellano* (2019) 33 Cal.App.5th 485 and *People v. Johnson* (2019) 35 Cal.App.5th 1315, have found that failure to object to the imposition of restitution fines and other fines, fees, and assessments at the time of their imposition did not forfeit the issue because *Dueñas* was " 'a newly announced constitutional principle that could not reasonably have been anticipated at the time of trial.' " (*Gutierrez*, *supra*, at p. 1032, quoting *Castellano*, at p. 489.)  However, in another case, *People v. Frandsen* (2019) 33 Cal.App.5th 1126, the court found that defendant had forfeited the issue for a variety of reasons, including that "even pre-*Dueñas* governing law permitted a challenge to a maximum restitution fine based on ability-to-pay grounds." (*Gutierrez*, at p. 1032.)  Nevertheless, *Gutierrez* held that these cases were not actually at odds.  Indeed, the court in *Gutierrez* ultimately found it "unnecessary to address any perceived disagreement on the forfeiture issue" because "[b]oth *Castellano* and *Johnson* "involved situations in which the trial court imposed the statutory *minimum* restitution fine," while in the case before them "as in *Frandsen*, the trial court imposed the statutory *maximum* restitution fine." (*Id.* at pp. 1032-1033.)  This was relevant because, "as *Frandsen* correctly notes, even before *Dueñas* a defendant had every incentive to object to imposition of a maximum restitution fine based on inability to pay because governing law as reflected in the statute [citation] expressly permitted such a challenge." (*Id.* at p. 1033.)  According to this reading of *Johnson, Castellano*, and *Frandsen*, these cases are not contradictory, but counsel two different approaches depending on whether the challenged restitution fine was the minimum or some amount

13

in excess of that. That is, a defendant can be found to have forfeited his right to challenge a restitution fine on ability to pay grounds only if that fine was greater than the minimum.

In this case, we are persuaded by *Gutierrez*'s reasoning and its reading of *Johnson, Castellano*, and *Frandsen*. Accordingly, because the trial court in this case imposed a $5,000 restitution fine—well above the $300 minimum fine, we find that defendant's failure to object to the restitution fine forfeited his ability to challenge the imposition of the restitution fine.

Defendant's additional argument that his counsel was ineffective for failing to preserve the inability-to-pay issue is without merit. We cannot determine from the record why counsel failed to request a hearing on defendant's ability to pay at the resentencing hearing. It is possible that defendant did have the ability to pay the fine and assessments and, therefore, counsel made a rational decision not to raise the issue. Moreover, in the absence of a record from which we could determine that defendant did not have the ability to pay, defendant has failed to establish a reasonable probability that, if counsel had raised the issue below, he would have obtained relief. (See *Strickland v. Washington* (1984) 466 U.S. 688, 694.)

C.     THE ABSTRACT OF JUDGMENT SHOULD BE AMENDED

Defendant argues, and the People agree, that the trial court failed to calculate his actual custody credits as of the date of resentencing. We agree with the parties.

In this case, according to the probation report, defendant was arrested on May 30, 2002. Based on that date, the parties agree that defendant has served 6,300 days of actual custody.

We will direct the trial court to amend the abstract of judgment to reflect the number of days that defendant has served in prison as of the date of resentencing. (*People v. Buckhalter* (2001) 26 Cal.4th 20, 23, 37; § 2900.1; *People v. Saibu* (2011) 191 Cal.App.4th 1005; 1012-1013.)

## DISPOSITION

The trial court is directed to modify defendant's abstract of judgment to reflect the correct number of days that defendant has served in the custody of the Director of the Department of Corrections and Rehabilitation, in accordance with this opinion. The trial court is directed to forward a certified copy of the amended abstract to the appropriate authorities. (*People v. Quinonez* (2020) 46 Cal.App.5th 457, 467.) In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
Acting P. J.

We concur:

SLOUGH
J.

FIELDS
J.

15