Filed 7/26/21  P. v. Wilkins CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H047572 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1899798) |
| v. | |
| JAMES EDWARD WILKINS, | |
| Defendant and Appellant. | |

Appellant James Edward Wilkins argues the trial court abused its discretion when it imposed a custodial term longer than its previously indicated sentence.  He also contends that a recent statutory change requires the striking of enhancements for prior prison terms.  We agree that the sentencing enhancements should be stricken but reject Wilkins's other arguments.

## I.  FACTS AND PROCEDURAL BACKGROUND

On September 1, 2018, officers from the San Jose State University Police Department observed Wilkins riding a Yamaha motorcycle with fraudulent paper license plates.[1]  The officers noticed that the motorcycle's ignition was heavily damaged and lacked a key.  A records check revealed the motorcycle had been reported stolen.  The

---

[1] These facts are taken from the probation report prepared for Wilkins's sentencing.

officers placed Wilkins under arrest, searched him, and found methamphetamine and a glass pipe in his jacket pockets. On October 25, 2018, police spoke with the motorcycle's owner, who said the motorcycle was worth $8,000 and he had not given anyone permission to use it.

Approximately six years earlier, on June 12, 2012, Wilkins had been sentenced in an unrelated case to 10 years in prison. He was released on March 3, 2016, and placed on post-release community supervision (PRCS). Wilkins had been found in violation of PRCS on August 22, 2016, November 1, 2016, June 15, 2017, and May 14, 2018.

Based on the motorcycle incident, the Santa Clara County District Attorney filed an amended information charging Wilkins with taking or the unauthorized use of a vehicle with a specified prior (Veh. Code, § 10851, subd. (a); count 1) with an allegation that Wilkins had previously been convicted of a felony violation of Vehicle Code section 10851 (Pen. Code, § 666.5),[2] buying or receiving a stolen motor vehicle with a prior conviction (§ 496d, subd. (a); count 2) with an allegation that Wilkins had previously been convicted of a felony violation of Vehicle Code section 10851 (§ 666.5), misdemeanor possession of a specified controlled substance (Health & Saf. Code, § 11377, subd. (a); count 3), and misdemeanor possession of controlled substance paraphernalia (Health & Saf. Code, § 11364, subd. (a); count 4). The information also alleged that Wilkins had served seven prior prison terms within the meaning of section 667.5, subdivision (b) (hereafter section 667.5(b)). The prior prison terms had resulted from six convictions for felony driving under the influence with prior convictions for driving under the influence (Veh. Code, § 23550.5, subd. (a)), and one conviction for grand theft (§ 487, subd. (c)).

---

[2] Unspecified statutory references are to the Penal Code.

2

On May 16, 2019,[3] Wilkins entered a no contest plea to all counts in the amended information and admitted five of the section 667.5(b) allegations.[4] Wilkins did not enter his pleas pursuant to a plea agreement with the district attorney but instead entered into an "open plea." The trial court gave Wilkins an indicated sentence, which the trial court described as "three years [of] mandatory supervision," including "one year of custody." The trial court highlighted that the three year term was "not an offer" but was an indicated sentence it had made over the district attorney's objection. The trial court stated that Wilkins faced a maximum sentence of nine years for the charges.

Wilkins filled out a plea form and initialed "JF" next to certain boxes.[5] The plea form indicates that Wilkins's plea was an open plea with a "non-binding, tentative indicated sentence" from the court of three years in prison, consisting of one year in custody followed by two years on mandatory supervision. Line 49 of the form is entitled " 'Cruz' Waiver." It states "I understand if I willfully fail to appear for future court dates and/or commit new crimes, I will lose the benefit of any plea agreement. The sentencing judge could then impose a different or greater punishment up to the maximum possible sentence, and I would not be allowed to withdraw my plea because of that different or greater punishment." The box next to line 49 contains a crossed-out "X." Immediately under line 49 appears a handwritten notation that reads "Failure to comply with SORP conditions." Wilkin's initials of "JF" appear next to that handwritten notation.

Before taking Wilkins's plea, the trial court explained to Wilkins that, prior to sentencing, Wilkins would be on pretrial release in this case and on PRCS for his prior felony conviction. The trial court stated that Wilkins would need to check in with pretrial services the following day. Wilkins indicated that he understood. The trial court

---

[3] Unless otherwise indicated, all dates were in 2019.
[4] The district attorney had previously stricken two of the section 667.5(b) allegations from the amended information.
[5] Wilkins apparently uses the name "James Foster."

continued, "And if you don't check in with Pretrial Services or you don't do everything they want you to do, which is report and test clean, when you come back with me, it could be the same as not showing up. [¶] This three years would be no longer the lid. You are agreeing that I could sentence you to the maximum of nine years. I don't want to do that. And we could have—if we got there, we could have a discussion about should I stick with three or can I go higher. [¶] But you need to know that if you don't see Pretrial Services and don't do what they want, that you're still—your plea of guilty is still in effect, but that three number can go up as high as nine. [¶] So you do have two places you need to be checking in with between now and before I see you in a couple of weeks. And there's a bunch of things you have to do but those are the same things you've already been doing. There are some serious consequences if you fail to do those. I want to make sure you understand all that. [¶] Do you feel you understand all those things?" Wilkins answered, "[y]eah."

Referring to the plea form, the trial court asked Wilkins if he had actually read and understood all the items on the form he initialed and signed, and Wilkins said that he had. Wilkins had no questions for the trial court or his attorney about the form.

Following Wilkins's entry of pleas of no contest, the trial court ordered Wilkins released on supervised own recognizance release (SORP). Among other conditions of release, the trial court ordered Wilkins to report to pretrial services, not to use any illegal drugs, and submit to drug testing. Wilkins verbally agreed to the terms of supervised release and signed a form agreeing to them. The trial court set a sentencing date of May 29.

Wilkins appeared in court on May 29. For reasons not explained in the record on appeal, Wilkins's sentencing was continued to June 12.[6] Wilkins did not appear in court

---

[6] The record on appeal does not contain the transcript for the May 29 or June 12 court appearances.

4

on June 12. The trial court revoked Wilkins's SORP release and issued a no-bail bench warrant.

On September 25, Wilkins appeared in court in custody, and the trial court continued the matter until October 9 for sentencing. On October 9, the trial court conducted a sentencing hearing. It stated that it intended to sentence Wilkins to something other than the three year indicated sentence based on Wilkins's lack of compliance with the SORP conditions and his failure to appear at sentencing.

In response to the court's tentative sentence, Wilkins's trial counsel asked "to address the *Cruz* violation in this case." Counsel stated that Wilkins had actually come to the courthouse on June 12 (the sentencing date he missed), but he was late because he was walking to court and had an injured leg. Counsel indicated that Wilkins walked for two or two and a half hours to get to court and Wilkins "makes an effort that [counsel had] never seen other clients make." According to counsel, after the missed court date on June 12, Wilkins contacted pretrial services, which told Wilkins to contact his attorney. In response to a question from the trial court, Wilkins's counsel stated that was the only time Wilkins contacted pretrial services after his release on SORP. Wilkins's counsel requested that the trial court impose the original indicated sentence of three years.

The district attorney requested that the trial court impose a four year custodial sentence. The district attorney observed that, on June 12, there had been a motion by pretrial services to revoke SORP because Wilkins had repeatedly failed to contact pretrial services, had tested positive for marijuana, and on multiple occasions had failed to test for illegal narcotics. The district attorney noted that, during the pendency of the case, the trial court had released Wilkins on SORP four previous times over the district attorney's objection.

The trial court recognized Wilkins's efforts and stated that it had "really come to appreciate and like" him. However, the court stated that it believed it had extended as many opportunities to Wilkins as it could under the circumstances. The court stated that

it had the authority to give a longer sentence than three years based on the *Cruz* waiver. It believed it should impose a longer sentence than the indicated sentence because of Wilkins's failure to appear for sentencing and failure to report to pretrial services. Wilkins's counsel did not contest the post-plea facts as recited by the trial court and the district attorney or request a formal hearing on whether Wilkins had violated the conditions of his supervised release.

The trial court sentenced Wilkins to four years each on counts 1 and 2, staying the punishment on count 2 pursuant to section 654, and to 60 days on counts 3 and 4, to be served concurrently with all other counts. The court imposed the four-year term under section 1170, subdivision (h), ordered that it be served in custody, and—according to the minute order—struck the punishment on the section 667.5(b) enhancements. The court awarded 421 days of custody credits.

Wilkins timely appealed, asserting that his appeal was based solely on his sentence or matters occurring after his plea. (See Cal. Rules of Court, rule 8.304(b).) He did not obtain a certificate of probable cause.

## II. DISCUSSION

Wilkins contends the trial court abused its discretion and violated his due process rights when it sentenced him to four years to be served in custody after having indicated a three year sentence, split between one year in custody and two years of mandatory supervision. Wilkins asserts that the trial court never obtained a *Cruz* waiver from him and did not secure an express waiver of Wilkins's statutory rights under section 1192.5.[7] Wilkins maintains that, in any event, he did not violate the terms of his plea agreement because he did not willfully fail to appear at his sentencing, which is an implicit term of

---

[7] In relevant part, section 1192.5 provides, "Where the plea is accepted by the prosecuting attorney in open court and is approved by the court, the defendant, except as otherwise provided in this section, cannot be sentenced on the plea to a punishment more severe than that specified in the plea and the court may not proceed as to the plea other than as specified in the plea."

6

any *Cruz* waiver. Wilkins asserts his failure to appear for his sentencing was not willful because he was simply late arriving to the courthouse because of "difficult personal circumstances," including his use of a cane. Wilkins contends that the trial court violated his due process rights when it did not provide him an opportunity to be heard in the form of an evidentiary hearing on the circumstances of his violation of his SORP conditions. Wilkins requests that the matter be remanded with directions to the trial court to impose the indicated sentence or allow Wilkins to withdraw his plea.

Wilkins also requests a remand for the trial court to strike the five prior prison term enhancements under the newly-enacted Senate Bill No. 136 (2019-2020 Reg. Sess.) (hereafter SB 136), which largely eliminated the one-year enhancement for prior prison terms.

The Attorney General counters that this court may not consider Wilkins's argument that the trial court did not properly secure a *Cruz* waiver because Wilkins did not secure a certificate of probable cause for his appeal. The Attorney General maintains that, in any event, the plea form demonstrates that Wilkins did give a *Cruz* waiver and points out that Wilkins's trial counsel assumed that Wilkins had entered such a waiver when he argued that Wilkins had not actually violated its terms. The Attorney General states that substantial evidence supports the trial court's conclusion that Wilkins willfully failed to appear for his sentencing, and Wilkins forfeited his due process contention by failing to present it to the trial court. The Attorney General agrees with Wilkins that he is entitled under SB 136 to have his prior prison term enhancements stricken.

Wilkins replies that he does not challenge the validity of his plea. Wilkins asserts that he entered an open plea with no bargained-for specific sanction for nonappearance at sentencing, and a *Cruz* waiver was therefore not required. Nevertheless, Wilkins contends "the trial court increased the sentence on the mistaken belief that there had been a *Cruz* waiver. Mr. Wilkins does not challenge the validity of his plea, he challenges the trial court's abuse of sentencing discretion in increasing the sentence."

7

We review a trial court's sentencing decision for abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) A trial court abuses its sentencing discretion "if it relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision." (*Ibid.*)

Wilkins contends that he did not actually enter into a *Cruz* waiver here because he entered into an open plea by pleading no contest to all the charges. We agree. A "*Cruz* waver" is based on principles articulated by the California Supreme Court in *People v. Cruz* (1988) 44 Cal.3d 1247. In that case, the defendant had entered into a plea bargain providing for a probationary term. The defendant was released on bail but failed to appear at sentencing. Because of this failure to appear, the trial court stated it did not intend to follow the plea bargain, refused to allow the defendant to withdraw his plea, and imposed a prison sentence. (*Id*. at p. 1249.) The Supreme Court reversed, citing section 1192.5, and concluded this statute prevents the trial court from imposing a term longer than that contained in the plea bargain unless it had given the defendant the opportunity to withdraw his plea. The Supreme Court also noted that a trial court could "impose a sentence in excess of the bargained-for term" as a result of a failure to appear if, at the time the trial court accepts the plea, the defendant so agrees and expressly waives the right to withdraw the guilty plea. (*Id*. at p. 1254, fn. 5.) This observation has given rise to the concept of "*Cruz* waiver." However, the reasoning in *Cruz* does not apply here because, unlike the situation in that case, there was no plea bargain, and hence no potential violation of section 1192.5. Therefore, there was no need for Wilkins to waive his rights under that section by entering into a *Cruz* waiver.

Wilkins pleaded no contest to all the charges after the trial court gave an indicated sentence. The Supreme Court in *People v. Clancey* (2013) 56 Cal.4th 562 (*Clancey*) explained the parameters of an indicated sentence. When a defendant pleads guilty to all the charges, there is no requirement that the People consent to a guilty plea and " 'the court may indicate "what sentence [it] will impose if a given set of facts is confirmed,

8

irrespective of whether guilt is adjudicated at trial or admitted by plea." ' " (*Id.* at p. 570.) Importantly, unlike the case with a plea bargain, an indicated sentence carries no promise that the trial court will impose a particular sentence. "The development of new information at sentencing may persuade the trial court that the sentence previously indicated is no longer appropriate for this defendant or these offenses. Or, after considering the available information more carefully, the trial court may likewise conclude that the indicated sentence is not appropriate. Thus, even when the trial court has indicated its sentence, the court retains its full discretion at the sentencing hearing to select a fair and just punishment." (*Id.* at p. 576.)

Here, the trial court made clear to Wilkins that its indicated sentence of three years (of which one year would be served in custody, followed by two years of supervised release) would not necessarily be imposed if Wilkins did not appear at sentencing or otherwise failed to comply with the terms of supervised release. The "plea form" conveyed this information to Wilkins through its reference to a " '*Cruz*' waiver" and its insertion of the language "Failure to comply [with] SORP conditions," which Wilkins initialed. The trial court specifically warned Wilkins during the change of plea colloquy that "if you don't check in with Pretrial Services or you don't do everything they want you to do, which is report and test clean, when you come back with me, it could be the same as not showing up. [¶] This three years would be no longer the lid. You are agreeing that I could sentence you to the maximum of nine years." "[Y]ou need to know that if you don't see Pretrial Services and don't do what they want, that you're still—your plea of guilty is still in effect, but that three number can go up as high as nine." Wilkins told the trial court that he understood and agreed.

Therefore, both under the general framework of an indicated sentence and based on this specific discussion between the trial court and Wilkins, Wilkins understood that the trial court would not necessarily sentence him to three years and could impose any term up to the maximum punishment. That the trial court referenced the principles of a

9

*Cruz* waiver rather an indicated sentence when explaining its authority to impose a longer sentence does not create reversible error. "[A] trial court's ruling must be affirmed even if ' "given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion." ' " (*T.A.W. Performance, LLC v. Brembo, S.p.A.* (2020) 53 Cal.App.5th 632, 643.) As the trial court had the authority under the rubric of an indicated sentence to increase the sentence based on new information learned (*Clancey*, *supra*, 56 Cal.4th at pp. 576–577), the trial court did not abuse its discretion in so doing.

Wilkins also contends the trial court lacked the authority to increase his sentence beyond the indicated three years, because there was no evidence he willfully failed to appear for his sentencing. Wilkins argues the evidence shows he was merely late for court, and his tardiness was not willful because Wilkins walks with difficulty and uses a cane.

It is clear from the record that the trial court elected to increase Wilkins's sentence based on its findings about Wilkins's post-release conduct. We review the trial court's factual determination that Wilkins had violated the conditions of his release for substantial evidence. (*People v. Rabanales* (2008) 168 Cal.App.4th 494, 509.)

Before imposing sentence, the trial court stated that it intended to impose a term longer than its indicated sentence based on Wilkins's failure to appear for sentencing and failure to report to pretrial services. There is no question that Wilkins did not, in fact, appear for his sentencing date at the appointed time—the minute order states that Wilkins was not present, and Wilkins himself never argues that he timely appeared. He says he was late and his tardiness was not willful because of his difficulties in walking. However, the trial court considered and necessarily rejected this argument before imposing sentence, and substantial evidence supports its conclusion that Wilkins was not present in the courtroom at the time set for his sentencing.

10

In any event, Wilkins does not address the trial court's alternative basis for increasing the sentence—namely, that Wilkins had failed to report to pretrial services as directed. Indeed, Wilkins's trial counsel appears to have conceded as much at the sentencing hearing. The trial court also had before it evidence that Wilkins had failed to drug test as directed, which also violated the conditions of Wilkins's supervised release. Therefore, substantial evidence supports the trial court's conclusion that Wilkins had not complied with the terms of his release, and the trial court had clearly warned Wilkins that failure to do so would serve as a basis for imposition of a sentence longer than three years. On these facts, we decide the trial court did not abuse its discretion in imposing a four-year sentence.

Turning to Wilkins's contention that his due process rights were violated by the trial court's failure to conduct a formal evidentiary hearing on whether his failure to appear at sentencing was willful, we decide that Wilkins forfeited that contention by failing to request a hearing before the trial court. (*People v. Scott* (1994) 9 Cal.4th 331, 352, fn. 15.) Moreover, the trial court entertained Wilkins's counsel's detailed arguments that Wilkins had not willfully failed to appear for sentencing. We discern no due process violation.

We agree with Wilkins's contention—and the People's concession—that he is no longer subject to the section 667.5(b) enhancements. "Prior to January 1, 2020, section 667.5, subdivision (b) required trial courts to impose a one-year sentence enhancement for each true finding on an allegation the defendant had served a separate prior prison term and had not remained free of custody for at least five years." (*People v. Jennings* (2019) 42 Cal.App.5th 664, 681.) "Effective as of January 1, 2020, Senate Bill No. 136 (2019-2020 Reg. Sess.) amends section 667.5, subdivision (b) to limit its prior prison term enhancement to only prior prison terms for sexually violent offenses, as defined in Welfare and Institutions Code section 6600, subdivision (b)." (*Ibid.*)

The statute is retroactive and applies to cases not yet final as of its effective date. (See *In re Estrada* (1965) 63 Cal.2d 740, 745; *People v. Winn* (2020) 44 Cal.App.5th 859, 872.)  SB 136 applies since Wilkins's case was not yet final on January 1, 2020, and his prior prison term enhancements were for offenses which were not sexually violent offenses.

Generally, when part of a sentence is stricken, the case is remanded " 'so the trial court can exercise its sentencing discretion in light of the changed circumstances.' " (*People v. Buycks* (2018) 5 Cal.5th 857, 893.)  However, because the punishments for the five prior prison term enhancements here were stricken by the trial court, striking the enhancements themselves will have no effect on Wilkins's sentence  Furthermore, a remand for resentencing is unnecessary as the trial court already imposed the maximum sentence available without the prior prison term enhancements.  (*People v. Lopez* (2019) 42 Cal.App.5th 337, 342.)  Accordingly, we will modify the judgment by striking the five prior prison term enhancements and affirm the judgment as modified.

## III.  DISPOSITION

The judgment is modified to strike the prior prison term enhancements.  (Pen. Code, § 667.5, subd. (b).)  The superior court clerk is directed to modify the abstract of judgment to reflect this change and to forward a certified copy of the modified abstract of judgment to the Department of Corrections and Rehabilitation.  As modified, the judgment is affirmed.

_____
                Danner, J.

WE CONCUR:

_____
Greenwood, P.J.

_____
Grover, J.

**H047572**
*People v. Wilkins*