Filed 12/1/22  P. v. Barrios CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D079769 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD286884) |
| KEVIN BARRIOS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Daniel F. Link, Judge.  Affirmed in part, vacated in part, and remanded.

Matthew A. Lopas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal and Elizabeth M. Kuchar, Deputy Attorneys General, for Plaintiff and Respondent.

Kevin Barrios appeals from the sentence imposed after his guilty plea to false imprisonment by violence or menace.  (Pen. Code, §§ 236, 237,

subd. (a).)[1]  He argues that:  (1) he is entitled to a remand for resentencing under Assembly Bill No. 124 (2021-2022 Reg. Sess.), which went into effect after his sentencing and established a new presumption in favor of the lower term if the defendant's "psychological, physical, or childhood trauma" was a "contributing factor in the commission of the offense" (§ 1170, subd. (b)(6)(A)); and (2) he is entitled to have his excess presentence custody credits applied to reduce his three-year period of parole.

We conclude that Assembly Bill No. 124 applies retroactively to cases not yet final on appeal, and that it requires a remand for resentencing on this record.  We also accept the People's concession as to the excess presentence custody credits.  Accordingly, we vacate the sentence, remand for resentencing, and otherwise affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

A.  *The Crime*

On the morning of August 9, 2020, Christopher W. was sitting in his pickup truck on India Street in San Diego.  A man later identified as Barrios approached and began stabbing Christopher's vehicle using a sharpened piece of metal with a handle wrapped in tape.  Barrios damaged the side panels of the vehicle and caused several gouges and scratches.  He also pointed the weapon at Christopher and threatened to kill him.  Christopher sat in his vehicle for approximately 20 minutes, waiting for Barrios to leave.  When Christopher exited his truck, Barrios aggressively approached him while swinging the weapon, coming within an arm's length.  Christopher yelled at Barrios and he backed down.  Christopher feared for his life and believed Barrios was going to stab him.

---

[1]    Further statutory references are to the Penal Code.

2

B.    *Pre-Sentencing Proceedings*

In September 2020, Barrios was charged with criminal threats (§ 422) and false imprisonment by violence, menace, fraud and deceit (§§ 236, 237, subd. (a)).

Later the same month, Barrios's appointed counsel declared a doubt as to his mental competence and requested that the proceedings be suspended under section 1368. The trial court suspended the proceedings so that Barrios could be evaluated by mental health professionals.

Two mental health professionals evaluated Barrios's mental competence and filed reports with the court. One of the reports noted that Barrios had "been sexually abused by his mother" and "placed in foster care" and that he "admitted having been in a mental hospital on 5 occasions in the past." Another report stated that Barrios was first arrested at the age of 11 for an incident he said occurred after his mother " 'was being physically violent with [him].' " Both professionals concluded that Barrios suffered from mental illness and was not mentally competent to stand trial.

Barrios's mental health symptoms included delusional thoughts and beliefs. One psychologist concluded that Barrios "maintains delusional beliefs related to his arrest in the instant offense." In describing the charged offense, Barrios told her that he was "working on the side as a field coordinator" for the victim, who "had some legal problems." Barrios stated: " 'I wasn't sure if I was going to join his company and accept pro bono as an associate. I knew this man. He had a mental illness. . . . He was late for a meeting I had set up and I was upset over him. I explained that I had him recorded because I had my atm card and I had parked my vehicle. I think he wanted to get rid of me. . . . I had a pen in my hand. I was writing a small child's book script. I was brainstorming. I noticed he had pulled up and was

sitting in his car.  I was wanting to talk to him about not showing up to meet me.' "

In February 2021, the court found Barrios mentally incompetent to stand trial under section 1368 and ordered that he be committed to a state hospital or county jail for competency restoration treatment.  After seven months of treatment, another psychiatrist filed a report concluding that Barrios had become competent to stand trial.  Accordingly, the trial court reinstated the criminal proceedings.

In October 2021, Barrios pled guilty to the false imprisonment charge with an "indicated" lower-term sentence of 16 months in prison and a dismissal of the remaining charge.

C.    *Probation Report*

Before sentencing, the probation officer filed a probation report.  The probation report summarized Barrios's lengthy criminal history, which began when he was a juvenile in the early 1990s.  His prior offenses included crimes related to theft, domestic violence, vandalism, assault, drugs, and weapons.  His record also included multiple prior findings that Barrios was incompetent to stand trial and corresponding commitments to mental hospitals.  The probation officer noted that Barrios "went to Atascadero State Hospital for the first time in 2009" and "[f]or the next several years, he would be committed to various state hospitals several times regarding competency issues."  Barrios "admitted being hospitalized at Atascadero, Metro, and Patton State Hospitals in the past."  He had also served six prior prison terms and had done poorly on all types of supervision.

According to the probation officer, "[i]t appears the defendant has struggled with mental health issues for many years as he has gone through the mental competency hearing process numerous times.  To the defendant's

4

credit, he is currently on psychotropic medication, and he indicated he plans to stay on his medications upon release."

Barrios reported to the probation officer that he was "raised by 'a lot of people' including his grandmother, aunt, and his parents." Barrios said that his mother physically abused him as a child, and his father went to prison for drug-related offenses.

The probation officer concluded that there were two possible circumstances in mitigation: (1) Barrios may have been suffering from a mental condition that significantly reduced his culpability for the crime; and (2) he voluntarily acknowledged wrongdoing at an early stage of the criminal process.

The probation officer also concluded that there were seven possible circumstances in aggravation: (1) Barrios was armed with a weapon, a sharpened piece of metal, at the time of the crime; (2) he engaged in violent conduct that indicated a serious danger to society, in that the victim appeared to be completely random and was targeted for unknown reasons; (3) his prior convictions as an adult were numerous and of increasing seriousness; (4) he had served six prior prison terms; (5) he was on two grants of formal probation when the crime was committed; (6) his prior performance on probation, mandatory supervision, and parole was unsatisfactory; and (7) in a letter to the court (attached to the probation report), the victim expressed long-lasting fear caused by the defendant's actions, as a result of which he moved to another county.[2]

---

[2] In the letter, the victim also said that he believed "in the power of forgiveness and restoration" and requested that Barrios be ordered to perform community service and participate in vocational rehabilitation and diversion programs "as a condition of probation."

The probation report stated: "Given the disproportionate amount of aggravants compared to mitigants, the upper term of three years could be justified. However, the middle term of two years appears to be sufficient punishment for this crime." Accordingly, the probation officer recommended the middle term of two years.

D.    *Sentencing*

At sentencing, the court noted that Barrios already had more than two years credit for time served. The court stated: "I was planning on giving him two years. He will have credit for time served. It will be a paper commit."

After the prosecutor noted that the victim had indicated he would be attending the sentencing hearing, but was not present, the court remarked, "I know he wrote a great statement, which I thought was very effective. And I hope you had a chance to read it because the victim was very scared and has now moved since this incident. But [Barrios] will serve two years. He'll likely be released today because you do have so many credits."

Without any further argument or explanation, the court then pronounced judgment as follows: "Probation is denied. And you're committed to the custody of the sheriff, pursuant to 1170(h)(5)(a), for two years. You've already served that two years." The court awarded Barrios 928 days of credit for time served. Because the credits exceeded the two-year sentence by 198 days, Barrios's sentence was deemed served and he was released from custody on parole immediately. Barrios filed a timely appeal.

DISCUSSION

I

Barrios first argues that he is entitled to resentencing under Assembly Bill No. 124, which became effective on January 1, 2022, after his original sentencing. (Stats. 2021, ch. 695, § 5.3.) The People concede (and we agree)

6

that Assembly Bill No. 124 applies retroactively to nonfinal cases on appeal. (*People v. Gerson* (2022) 80 Cal.App.5th 1067, 1095 (*Gerson*); *People v. Banner* (2022) 77 Cal.App.5th 226, 240 (*Banner*).) But the People contend that resentencing is unnecessary because the trial court "implicitly" found that imposing a low term would be contrary to the interests of justice. We conclude that Barrios is entitled to resentencing because the record does not clearly indicate that the trial court would not have imposed a low-term sentence under Assembly Bill No. 124.[3]

Assembly Bill No. 124 established a presumption in favor of a lower-term sentence under specified circumstances. (*Gerson, supra,* 80 Cal.App.5th at p. 1095.) As relevant here, the bill added the following language to section 1170: "[U]nless the court finds that the aggravating circumstances outweigh the mitigating circumstances [and] that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] (A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence." (§ 1170, subd. (b)(6).)

Barrios is entitled to resentencing under this new law unless the record *clearly indicates* that the trial court would have imposed the same sentence if

---

[3] Our resolution of this issue will not affect the amount of time actually served by Barrios because he had already accumulated enough custody credits to complete the two-year, middle-term sentence by the time of sentencing. However, Barrios is also arguing (and the People concede) that he is entitled to have any excess custody credits applied to his three-year parole term. If the trial court had imposed the low-term sentence of 16 months instead of the two-year middle term, Barrios would have had additional days of excess custody credits to apply to his parole term. We must therefore resolve the issue because it has a practical impact on Barrios's parole term.

it had been in effect at the time of the original sentencing.  (*Gerson, supra*, 80 Cal.App.5th at p. 1096.)  "This is because defendants are entitled to sentencing decisions made in the exercise of the informed discretion of the sentencing court.  A court that is not aware of the scope of its discretionary powers cannot exercise that informed discretion any more than a court whose sentence may have been based on misinformation regarding a material aspect of the defendant's record."  (*Ibid*., internal quotation marks and citation omitted.)

The record here does not contain any clear indication that the trial court would have imposed a middle-term sentence even under Assembly Bill No. 124.  Under the new law, "psychological trauma based on mental illness may be a circumstance qualifying for the lower term presumption in section 1170, subdivision (b)(6)."  (*Banner, supra*, 77 Cal.App.5th at p. 241.)  The record here indicates that Barrios suffered from longstanding mental illness; he had repeatedly been found incompetent to stand trial and committed to state mental hospitals; his symptoms included delusional thoughts and beliefs; and his delusional beliefs may have been a contributing factor in the commission of the charged offense.  These facts demonstrate a reasonable possibility that Barrios may be entitled to a presumption in favor of the lower term under Assembly Bill No. 124.  (§ 1170, subd. (b)(6).)

The record also contains evidence of possible "childhood trauma" that might support the same presumption.  (§ 1170, subd. (b)(6)(A).)  Barrios told the probation officer that his mother physically abused him as a child, his father went to prison for drug-related offenses, and he was raised by "a lot of people."  Barrios told a psychiatrist that he had "been sexually abused by his mother" and "placed in foster care."  According to Barrios, he was first

arrested at the age of 11 for an incident that occurred after his mother " 'was being physically violent with [him].' "

The People argue that the trial court already considered Barrios's mental illness and childhood trauma at sentencing and "implicitly" found that imposing a lower term would be contrary to the interests of justice by imposing the middle term, rather than the indicated lower term. But the mere fact that the trial court imposed the middle term *without* any legal presumption in favor of the lower term does not clearly indicate that it would have done the same *with* such a presumption. Under Assembly Bill No. 124, if psychological or childhood trauma was a contributing factor in the commission of the crime, the presumption in favor of the lower term could be overcome only if the court found that the aggravating circumstances outweighed the mitigating. (§ 1170, subd. (b)(6).) If anything, the trial court's imposition of the middle term, rather than the upper term, suggests that it did *not* believe the aggravating circumstances outweighed the mitigating. (§ 1170, subd. (b)(2) (former subd. (b).) And the court's indicated lower term sentence also suggests that it was at least open to imposing the lower term. (See *People v. Clancey* (2013) 56 Cal.4th 562, 576 [though not binding at sentencing, an indicated sentence is "the trial court's considered judgment as to the appropriate punishment in the case"].)

As the People concede, the trial court "did not explicitly lay out the reasons for its sentencing decision . . . ." Indeed, the sentencing record is unusually sparse—most likely because the trial court recognized that it was only imposing a "paper commit" to a term already satisfied by Barrios's accumulated custody credits. The court said little more than was strictly necessary just to impose the sentence. In the absence of any other statements by the trial court explaining its thinking at sentencing, nothing in

9

the record clearly indicates how the court would have exercised its discretion applying Assembly Bill No. 124's presumption in favor of the lower term. Mere speculation about what the trial court would have done under the new law is insufficient to satisfy the "clearly indicated" standard. (*People v. Bell* (2020) 47 Cal.App.5th 153, 199–200.)

Finally, we note that because Assembly Bill No. 124 was not yet in effect at the time of sentencing, Barrios and his counsel had no incentive to develop the record regarding his childhood and psychological trauma and its relationship to his commission of the crime. Accordingly, we conclude that the appropriate remedy is a remand for resentencing. (*Gerson*, *supra*, 80 Cal.App.5th at p. 1096 [remanding for resentencing under Assembly Bill No. 124 because at time of sentencing, "the trial court had no statutory reason to make, and [defendant] had no reason to seek, a finding that past psychological or physical trauma was a contributing factor to his commission of any of his offenses"]; *Banner*, *supra*, 77 Cal.App.5th at p. 242 [remanding for resentencing under Assembly Bill No. 124 because at time of sentencing, "neither [defendant] nor the court had a meaningful incentive to assess whether mental illness was a . . . 'contributing factor' in the crime"].) We emphasize that we express no opinion on how the trial court should exercise its discretion on remand.

10

## II

As noted, Barrios also contends that he is entitled to have his excess presentence custody credits applied to his three-year parole term. The People concede the issue. We agree. (§ 2900.5, subds. (a) & (c); *People v. Morales* (2016) 63 Cal.4th 399, 406; *In re Ballard* (1981) 115 Cal.App.3d 647, 649–650.) On remand, the trial court is directed to apply any excess presentence custody credits to Barrios's parole term.

## DISPOSITION

Barrios's sentence is vacated. The matter is remanded to the trial court for resentencing. In all other respects, the judgment is affirmed.

BUCHANAN, J.

WE CONCUR:


IRION, Acting P.J.


DO, J.

11